Alvin L. NIXON et al., Appellants,

v.

FIRST STATE BANK OF CORPUS CHRISTI, Appellee.

No. 1071.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1976.

Rehearing Denied Sept. 30, 1976.

M. W. Meredith, Jr., Meredith & Donnell, Corpus Christi, for appellants.

H. Tom Hermanson, Jr., Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a summary judgment case in which the appellants, all former employees of the appellee, First State Bank of Corpus Christi, are attempting to recover certain sums allegedly due and owed to them under a deferred compensation agreement and for damages for the breach of said agreement. From a judgment of the trial court grant-

ing the Bank's motion for summary judgment and denying appellants' claims, the appellants have perfected their appeal to this Court.

The appellants, Alvin Nixon, Thomas Mulligan and Jimmy Melton are all former executive officers of appellee, First State Bank of Corpus Christi. Each of the appellants had worked for the Bank in excess of 10 years prior to their voluntary resignation. Each of the appellants had entered into a separate but identical deferred compensation agreement with the Bank.

The deferred compensation agreement, which is the subject matter of this lawsuit, provided among other things, that upon reaching the age of 65 or becoming totally and permanently disabled, the Bank would pay its executive officers a deferred compensation of $5,000 per year for a period up to 20 years. When the appellants resigned from the Bank, the chairman of the board and the board of directors evidently began to question the language of the compensation agreement as to whether or not the appellants were entitled to any deferred compensation for their past services with the Bank. This question arose because of certain language contained in Section 6 of the deferred compensation agreement. The pertinent parts of Section 6 read as follows:

"Section 6.

Except as provided in Section 2 hereof, either party shall have the right to terminate and cancel this agreement at any time by giving thirty (30) days notice to the other party of such intention, subject to the following conditions:

(a) If this agreement is terminated by Employee before attaining retirement age, all benefits herein provided shall be forfeited, *except as set out in paragraph (c) of this section.*

(b) In the event of termination of the services of an Employee for cause, the validity of which said cause shall be determined solely by majority vote of the Board of Directors of the Employer and shall not be subject to review by any court or otherwise, all benefits hereunder may be forfeited or the

amount of such benefits redetermined by the Board of Directors of the Employer at the time of and in connection with such termination for cause.

(c) If this agreement is terminated by the Employer at any time after the Employee has rendered service for a period of ten years or more, the Employer shall make payments of the amounts to the beneficiaries and at the times specified under Sections 2, 3 and 4 hereof for a period of years corresponding to the number of full years of service rendered by the Employee to the Employer not exceeding a total of twenty years. . . ." (Emphasis supplied.)

The parties attempted to settle their differences, but when they could not agree, the Bank notified each appellant that it was terminating their rights under the deferred compensation agreement.

The appellants then filed suit against the Bank seeking to recover the present value of their deferred compensation earned and damages for anticipatory breach of the agreement. The Bank filed an answer and moved for summary judgment as did the appellants. The trial court denied appellants' motion for summary judgment and granted the Bank's motion for summary judgment. The essence of the Bank's motion was that there was no issue of fact as to the language of the agreement and that the only question before the court was one of law as to the construction of the agreement. The Bank alleged that the agreement was not ambiguous and that as a matter of law the appellants had forfeited all rights under the agreement. The trial court granted the Bank's motion for summary judgment in its entirety.

■ Appellants' first point of error is that the trial court erred in granting appellee's motion for summary judgment because appellee failed to prove as a matter of law that the agreement was not ambiguous. Under Rule 166–A, T.R.C.P. and the numerous decisions of the courts of this State, the movant has the burden of establishing as a matter of law that there is no genuine issue

of material fact and that the moving party is entitled to judgment as a matter of law. *"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934 (Tex.Sup.1972); *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.Sup.1970); *State v. Superior Oil Company*, 526 S.W.2d 581 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.). A summary judgment for a defendant is proper only if a plaintiff cannot succeed on any .theory plead by him for recovery. *Marshall v. Garcia*, 514 S.W.2d 513 (Tex.Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.). The defendant must negate the plaintiff's possibility of recovery by offering summary judgment proof which shows that the defendant is entitled to prevail as a matter of law. In this case, the defendant must show uncontrovertedly that the plaintiff cannot win the lawsuit because the deferred compensation agreement is capable of only one meaning or interpretation and that is such that the defendant must prevail. See *Glenn v. Prestegord*, 456 S.W.2d 901 (Tex. Sup.1970); *Beall v. Lo-Vaca Gathering Co.*, 532 S.W.2d 362 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

The main question for our determination is whether or not the deferred compensation agreement shows that the appellants are not entitled to collect their deferred compensation as a matter of law.

In construing contracts the cardinal rule of construction is to ascertain the intention of the parties as expressed in the instrument. It is the intent of the parties which must control. *Citizens Nat. Bank In Abilene v. Texas & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003 (1941); *Republic National Bank of Dallas v. National Bankers Life Insurance Company*, 427 S.W.2d 76 (Tex. Civ.App.—Dallas 1968, writ ref'd n.r.e.); *Davis v. Andrews*, 361 S.W.2d 419 (Tex.Civ. App.—Dallas 1962, writ ref'd n.r.e.). Contracts must be construed in their entirety and each part must be considered with every other part to determine the effect of one part on another part. *Southland Royalty Company v. Pan American Petroleum Corporation*, 378 S.W.2d 50 (Tex.Sup.1964); *Steeger v. Beard Drilling, Inc.*, 371 S.W.2d

684 (Tex.Sup.1963); *Citizen Nat. Bank In Abilene v. Texas & P. Ry. Co.*, supra; *Piper, Stiles & Ladd v. Fidelity And Deposit Company of Maryland*, 435 S.W.2d 934 (Tex.Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.); *Weaver v. Weaver*, 171 S.W.2d 898 (Tex.Civ.App.—Fort Worth 1943, writ ref'd w.o.m.).

The question of what constitutes an ambiguous contract has been variously stated by many courts. The Texas Supreme Court has stated:

> " . . . a contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning."

*Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951). See *Skelly Oil Company v. Archer*, 163 Tex. 336, 356 S.W.2d 774 (1961); *Walter E. Heller & Company v. Allen*, 412 S.W.2d 712 (Tex.Civ. App.—Corpus Christi 1967, writ ref'd n.r. e.); *Stowers v. Harper*, 376 S.W.2d 34 (Tex. Civ.App.—Tyler 1964, writ ref'd n.r.e.).

> " . . . if after applying established rules of interpretation to the contract *it remains reasonably susceptible to more than one meaning it is ambiguous*, . ."

*Universal C.I.T. Credit Corp. v. Daniel*, supra. (Emphasis supplied.)

The question of whether or not a contract is ambiguous is one of law to be determined by the court. *Vermillion Construction Company v. Fidelity & Deposit Company of Maryland*, 526 S.W.2d 744 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Louisiana-Pacific Corp. v. Cain*, 519 S.W.2d 528 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.); *Davis v. Andrews*, 361 S.W.2d 419 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.). The interpretation of a contract becomes a fact question only, when after application of pertinent rules of construction, there remains a genuine uncertainty as to which of two meanings is proper. *Universal C.I.T. Credit Corp. v. Daniel*, supra; *Lewis v. East Texas Finance Co.*, supra; *Sale v. Contran Corporation*, 486

S.W.2d 161 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.).

When a contract contains an ambiguity which can only be resolved by reference to extrinsic evidence or where there is doubt as to the true meaning of an ambiguous instrument, the granting of a motion for summary judgment is improper. *Thompson v. Hamrick*, 508 S.W.2d 949 (Tex. Civ.App.—Dallas 1974, writ ref'd n.r.e.); *Robert v. E. C. Milstead Ranching, Inc.*, 469 S.W.2d 429 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.); *Chapa v. Benavides Mill & Gin Company*, 420 S.W.2d 464 (Tex.Civ. App.—San Antonio 1967, writ ref'd n.r.e.); *Tinnin v. Crook*, 333 S.W.2d 617 (Tex.Civ. App.—El Paso 1960, writ ref'd n.r.e.).

Under the rules of law established in the above cited authorities, we must now look first to the document in question without consideration of any extrinsic evidence to determine if an ambiguity exists within the contract. As earlier stated, the alleged ambiguity is said to exist in Section 6 of the agreement.

First, Section 6 states that either party may cancel the agreement upon 30 days' notice subject to certain conditions.

The first condition is that if the agreement is terminated by the employee all benefits are forfeited except as set out in paragraph (c).

Paragraph (b) states that if the agreement is terminated by the employer for cause, all the employee's benefits are forfeited.

Paragraph (c) states that if the agreement is terminated by the employer any time after an employee has served for 10 years or more, the employee is entitled to certain enumerated benefits.

It is the appellants' argument that the phrase "except as set out in paragraph (c) of this Section" found in paragraph (a) creates the ambiguity. The appellants argue that paragraph (a) can be interpreted to mean that: first, if an employee quits he forfeits all benefits,—except if an employee quits after 10 years' service to the Bank, he is entitled to the same benefits as if his employment was terminated by the employer after serving 10 years or more. The appellants argue that these two phrases, when read together amount to a shorthand method of extending to an employee who voluntarily terminates his employment the same benefits as an employee who is voluntarily terminated by the employer. The appellants argue that there is nothing irrational about such an interpretation as it is in line with modern business trends. The appellants do not argue, under this point of error, that this is the only possible meaning of the contract but that it is one of two reasonable interpretations.

It is the Bank's argument on the other hand that the agreement contemplates three circumstances under which the employer-employee relationship would terminate. The first circumstance is that if the employee quits, he forfeits all benefits (6–a). The second is that if the employee is discharged for cause, the employee again forfeits all benefits (6–b). The third is that if the employee is discharged without cause by the employer, the employee would be entitled to benefits if he had been employed 10 years or more (6–c). It is appellee's argument that these are the only circumstances that were contemplated by the parties under which the employer-employee relationship terminates. The Bank goes on to argue that it is obvious that the parties intended there be some difference in benefits arising from the different circumstances under which the employer-employee relationship would terminate. Each of these different benefits are clearly delineated in paragraphs (a) and (c) of Section 6 and no other circumstances were contemplated or intended by the parties or manifested in the agreement. The Bank states that the appellants' interpretation of the agreement is a strained interpretation and not manifested by the expressed intent of the agreement.

The obvious intent of the agreement is to encourage the employees to continue their employment with the Bank and to reward such employees for their continued employ-

ment. The Bank argues that to construe the agreement to reward an employee who only worked 10 years would be contrary to the overall intent of the agreement. We disagree. The employee receives nothing until he has worked at least 10 years. If he continued on with the Bank, he would receive extra benefits for each full year he worked after 10 years, up to 20 years. The contract says: (6–c) " . . . payments are to be made for a period of years corresponding to the number of full years of service rendered by the employee not exceeding a total of twenty years." The contract recited that it was executed in consideration of the mutual promises and the mutual benefits that the parties will gain by the performance thereof.

We hold that the agreement is ambiguous. The manifested intent of the parties is to provide additional security to the employees of the Bank by setting aside certain specified sums of money to be paid to the employee or his family upon the occurrence of certain specified conditions, i. e., age 65, total and permanent disability, death before reaching age 65, termination by the employer without cause after 10 years and the possible interpretation of termination by the employee after 10 years' service. The agreement definitely sets out the circumstances under which the employee forfeits his benefits.

The Bank argues that Section 6 sets out three circumstances of termination and the entitlement to benefits by the employee under each set of circumstances. The problem with this construction is the lack of consideration of the language at the end of paragraph (a). If the appellee's argument is correct, then the language ("except as set out in Paragraph (c) of the Section") is meaningless. If each of the first three paragraphs are viewed as setting out a separate set of rights and conditions, the problem becomes apparent. Paragraph (a) concerns the circumstances where an employee voluntarily terminates his employment. Paragraph (b) concerns the circumstances where an employee is terminated for cause. Paragraph (c) concerns the circumstances where an employee is terminated without cause. If each of these paragraphs is viewed as being all inclusive of each parties' rights under each separate set of circumstances, then the language in paragraph (a): " . . . except as set out in paragraph (c) of the Section" must have some meaning. Since paragraph (a) concerns voluntary termination by the employee, it is reasonable to assume that if the parties had meant that any employee who voluntarily terminated would not be entitled to any benefits as the Bank contends, the parties would not have included the extra language in the paragraph, but would have ended the paragraph after the phrase: " . . . all benefits herein provided shall be forfeited." The final phrase in paragraph (a) must be construed as modifying or being some form of an exception to the rest of the paragraph.

How this phrase modifies the paragraph is ambiguous from the face of the agreement. However, there are two reasonable interpretations which can result from the reading of paragraphs "a" and "c". Each paragraph has three essential elements. The first element in each paragraph is the circumstance which triggers the operation of the rest of the paragraph. "If this agreement is terminated. . . ." The second element of each paragraph sets out who initiates the circumstance. " . . . by the employee . . ." (in paragraph 6a). " . . . by the employer . . ." (in paragraph 6c). The final element is the qualification of the circumstance " . . . before attaining retirement age . . . except as set out in paragraph (c) of this Section" (in paragraph 6a). " . . . at any time after the employee has rendered service for a period of ten years or more . . . ." (in paragraph 6c). The difference between each paragraph and the reason there are two separate paragraphs is that in paragraph 6(a) the circumstance (termination) is initiated by the employee and in paragraph 6(c) the circumstance is initiated by the employer.

█ The exception language of paragraph 6(a) cannot be ignored as the Bank

would have us do. It is not surplusage, so it must have some meaning. It must be remembered that *all* parts of the contract must be taken together to effectuate the fullest intent of the parties. Therefore, under the rules of contract construction there are at least two logical, reasonable but totally inconsistent meanings which can be given this contract, one by the Bank, and the other by the appellants. The contract is, therefore, ambiguous and the question of the intent of the parties is one for a trier of facts after consideration of extrinsic evidence. Appellants' first point of error is sustained. It is not necessary for us to rule on the appellants' second and third points of error.

Appellants' fourth point of error is that the trial court erred in not granting the appellants' motion for summary judgment because the appellants proved as a matter of law that they were entitled to compensation under the agreement. In light of our holding under appellants' first point of error, we must overrule this point of error. We have determined that the contract language is ambiguous. We cannot determine as a matter of law, from the summary judgment evidence, the intent of the parties was under the deferred compensation agreement.

The appellee brings two cross-points of error before this Court. The first cross-point of error claims that the trial court erred in overruling the Bank's motion to strike the appellants' request for admission since the requested information was privileged communication between an attorney and client. The second cross-point of error is that the trial court erred in refusing to strike the appellants' request for admission since the subject of the request for admission was an opinion on a question of law. These cross-points are, in effect, a request by the Bank for us to rule in advance that certain evidence is inadmissible if we reverse and remand this cause. Since the appellee Bank prays for no relief under these points, the name cross-point of error is a misnomer.

The intent of the parties in this contract is a question for determination on remand. It is one that may require further evidence and a determination by the trier of facts. We deem it unnecessary and inappropriate to rule in advance on the admissibility of evidence that may, or may not be offered.

The judgment of the trial court is REVERSED and the cause is REMANDED for trial.