Lewis W. MAPLES, Appellants,

v.

Alice Ann ERCK, et vir, Appellees.

No. 1833.

Court of Appeals of Texas,
Corpus Christi.

March 4, 1982.

Rehearing Denied April 8, 1982.

Homer E. Dean, Jr., A Professional Corp., Alice, for appellants.

F. B. Lloyd, Jr., Lloyd, Elizey & Lloyd, Alice, Robert M. Kendrick, F. Edward Baker, J. Michael Mahaffey, Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellees.

Before NYE, C. J. and UTTER and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

This case involves the interpretation of a boundary-fence line agreement. Louis W. Maples, independent executor of the estate of Dan J. Sullivan, III, deceased, Jean Sullivan Seiser and Frank Horlock (the Sullivans) brought a declaratory judgment action in the 28th Judicial District Court, Kleberg County, Texas, against Alice Ann McGill Erck and Frederick Erck (the McGills), seeking an interpretation of a 1930 agreement between the parties. The Sullivans contend that they have an exclusive and permanent right to possession of 131.93 acres of land owned by the defendants McGill, but enclosed by the plaintiffs Sullivan under the agreement. The trial court, sitting without a jury, entered a take-nothing judgment, from which the plaintiffs Sullivan appeal.

In 1930, D. J. Sullivan, plaintiffs' predecessor in title, owned and ran cattle on a large ranch in Kleberg, Brooks and Kenedy Counties. At the same time, H. F. McGill and J. C. McGill, defendants' predecessors in title, owned and ran cattle on an adjoining large tract of land in Kenedy County known as the "Santa Rosa de Arriba Grant." The McGill Ranch was bounded on the north, west and south by the Sullivan Ranch. Part of the boundary line between the two ranches was the center line of Los Olmos Creek with its meanderings, while another part of the boundary line was located in an area of shifting sand hills. The boundary between the two ranches was very difficult to maintain.

On July 1, 1930, with apparent deference to the problems of maintaining functional fences and clear boundary lines in the areas of the high and low waters of the creek and the areas of shifting and blowing sand, Sullivan and the McGills entered into the agreement which became the focus of this lawsuit. As a result of the agreement between the parties, certain lands along the

creek belonging to Sullivan came within the enclosure of the McGills, and certain lands belonging to the McGills came within the Sullivan enclosure. It is undisputed that from 1930 to the present, the Sullivans and the McGills and their respective predecessors in title have each enjoyed, without interruption or controversy, the use of the lands along Los Olmos Creek, some of which were located within certain enclosures but were owned by the other party. The Sullivans admit that the fee simple title to the 131.93 acre tract is in the defendants and concede that, in the light of the 1930 agreement, neither party has obtained any interest in lands of the other by prescription. However, the Sullivans insist that, by virtue of the 1930 agreement, they have acquired a permanent and exclusive right to possession of the lands that they have under fence that belong to the McGills.

The present dispute arose in 1978, when the Sullivan estate attempted to convey to (plaintiff) Horlock a parcel of land which included the land within the McGill tract. Upon discovery of the existence of the 1930 agreement recorded in the deed records of Kenedy County, the title company refused to insure title to the land within the McGill tract on behalf of the Sullivans, and Horlock refused to purchase it. However, Horlock purchased the remainder of the Sullivan property adjoining the disputed tract, and agreed to join in this litigation as the Sullivan's successor in title to determine the status of the tract.

The plaintiffs, by their three points of error, attack the trial court's interpretation of the 1930 agreement. Plaintiffs claim the agreement created an express easement, giving them an exclusive and permanent right to possession of the surface of the McGill tract.

 Neither party has alleged that the contract is vague or ambiguous. Therefore, the construction of the contract is a question of law for the court. See *East Montgomery County Municipal Utility District No. 1 v. Roman Forest Consolidated Municipal Utility District*, 620 S.W.2d 110 (Tex. 1981), and *Pitts v. Ashcraft*, 586 S.W.2d 685, 693 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n. r. e.). In such a situation, we must give effect to the intention of the parties as expressed or as it is apparent in their writing. Ordinarily, the instrument alone will be deemed to express the intention of the parties for it is the objective, not subjective, intent that controls. *Pitts v. Ashcraft, supra,* at 693; *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). In the interpretation of contracts, whether they be ambiguous or simply contain language of doubtful meaning, the primary intention of the courts is to ascertain and give effect to the true intention of the parties. To achieve this object, the courts will examine and consider the entire writing, seeking as best they can to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless. *Universal CIT Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157–8 (1951).

The Sullivans rely on the seventh and eighth paragraphs of the agreement as the basis for their contentions. The seventh paragraph reads as follows:

> "For the purpose of settling the boundary lines forever, between the parties hereto, *irrespective of the location of fence*, this agreement is made. It is, therefore, agreed between the parties hereto that the present fence, now used in separating the enclosures between the parties hereto, shall be used, as far as practical, as the same may now stand, and shall be changed in places where it will be advantageous in crossing said creek and in straightening out said line." (emphasis supplied)

The eighth paragraph states, in pertinent part:

> "In this connection it is understood that said fence line on the Olmos Creek has been inspected and agreed upon . . . and it is agreed and understood that said fence shall be moved so as not to run too close to said Olmos Creek, and is to run in as straight a line as possible, and, in order to do this, it is necessary, . . . that the

same shall be placed in such manner as to place the lands owned by parties of the first part south of said Creek and north of said fence line in the enclosure owned by said party of the second part, and after crossing said Creek with said fence from the south to the north the lands owned by party of the second part, between said Creek and said fence, will be within the enclosure of parties of the first part."

■ These two paragraphs express the understanding of the parties that certain of the lands belonging to each along the creek would fall within the enclosure of the other. The agreement recites the necessary changes to be made in the creek fenceline to effectuate the agreement. The very first sentence of paragraph seven is the first of three similar clear expressions of the parties' intent as the purpose for making the agreement, all saying the same thing in essentially the same words: "For the purpose of establishing the boundary lines between the parties hereto, irrespective of the location of fence, . . ." Even if we read these only two paragraphs as the complete agreement of the parties, the language is insufficient to grant an express easement of the lands of one to the other. While no special form or particular words are required, the language relied upon by a claimant must clearly show an intention to grant an easement. 21 Tex.Jur.2d *Easements* § 13; 17A Am.Jur. *Easements* § 29; See *Settegast v. Settegast Realty Co.*, 242 S.W. 485 (Tex.Civ.App.—Galveston 1922, writ ref'd); *Seastrunk v. Walker*, 156 S.W.2d 996 (Tex.Civ.App.—Waco 1941, writ ref'd w. o. m.). Nowhere in the instant agreement is there language which can be construed as expressing such an intent.

Reading the entire agreement together, it is clear to us that the parties intended only to clarify their boundaries and provide for convenient fence lines. They did not express any intent to grant to each other an interest in any of the land. A grant of an easement must be clear enough to identify the property subject to the easement with reasonable certainty. 17A Am.Jur., *supra*,

See e.g., *Wilson v. Guadalupe County*, 58 S.W.2d 1067 (Tex.Civ.App.—Beaumont 1933, writ ref'd); *Texas Power & Light Co. v. Casey*, 138 S.W.2d 594 (Tex.Civ.App.—Ft. Worth 1940, writ dism'd, judgmt cor.). Compare *Compton v. Texas Southeastern Gas Co.*, 315 S.W.2d 345 (Tex.Civ.App.—Houston [1st Dist.] 1958, writ ref'd n. r. e.). The 1930 agreement does not describe the tract here in controversy, nor does it refer to some other existing writing by which the easement claimed by the Sullivans may be identified with reasonable certainty.

The following language is found in the next to last paragraph of the agreement: ". . . regardless of where said fence lines may be placed, as hereinabove set forth, it shall not, in any manner, affect the boundary lines, as hereinabove set forth and established, and such fence *shall not be any evidence of the possession of any property owned by any party and within the enclosure of the other*, . . . ." (emphasis supplied)

The tenth paragraph of the agreement reads:

"It is further understood and agreed that said fences may be hereafter removed and constructed in such manner as may be practical, in order that the same may be maintained in said blowing sand and at such point as the parties hereto may agree upon, but the construction of said fences and the location of the same shall not affect the *boundary lines*." (emphasis supplied)

The consistent use of the plural forms reflects the intent of the parties that this paragraph apply to both of the areas of concern, the sand dunes *and* the creek bed. This provides for possible future changes in the fences and is inconsistent with the concept of granting an easement providing for "an exclusive and permanent right to possession."

The trial court, in entering judgment for defendants, concluded, inter alia, that: (1) "The fence line or boundary line agreement constituted merely a non-exclusive permission or license to use the property belonging to the other, but within the enclosure of the

fence," and; (2) "The fence line dealt with the fence line in its entirety rather than making reference to any particular rights, privileges or duties with any particular areas of the fence line." We believe the trial court properly interpreted the agreement of the parties. We hold that the agreement does not express an intent to create an easement which would give the Sullivans a permanent and exclusive right to possession of the 131.93 acre tract.

The Sullivans, in their second and third points of error, claim that these conclusions of the trial court are against the great weight and preponderance of the evidence. These factual insufficiency points require us to consider all the evidence, including any evidence contrary to the trial court's judgment. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); see also *Burnett v. Motyka*, 610 S.W.2d 735 (Tex. 1980). After carefully reviewing the entire record, we do not find any bases for reversal.

All the Sullivans' points of error are overruled. The judgment of the trial court is affirmed.