OPINION OF THE COURT
Albert A. Oppido, J.
This controversy is submitted on an agreed statement of facts, pursuant to CPLR 3222. Plaintiffs brought this action to recover under a homeowner’s insurance policy for damage caused when the basement floor of their house collapsed into a void. The issue for determination is whether the loss falls within the exclusionary provisions of the policy. For reasons discussed below, the court holds that the loss was not within the exclusions to the policy.
Defendant, Insurance Company of North America (INA), had issued a comprehensive “all-risk” policy to the plaintiffs prior to February 18, 1979, to cover their home. The basic policy was in the amount of $109,000 for a basic premium of $991 per year. The policy contains the following exclusions:
“This policy does not insure against loss or damage * * *
“O. to any building insured under Coverage A or B by mudflow, volcanic eruption, earthquake, landslide or any other earth, boulder or rock (including falling rock) movement;
*326 “T. caused by settling, shrinking or expansion in foundations, walls, floors or ceilings.” (Emphasis added.)
On February 18,1979, the plaintiffs discovered two large cracks in the floor of the basement, leaving one part more elevated than the other; the floor of the playroom in the basement was depressed 2 to 4 inches; the oil burner and tank had been tilted; the concrete slab floor in the basement had shifted, thereby causing the walls and floors throughout the house to go out of plumb and out of level. These conditions had not been observed prior to February 18,1979. The plaintiffs suffered financial loss of $27,500 as a result of this occurrence, and they had to leave their home for about a month while it was being repaired. The parties have agreed that the plaintiffs’ loss was “caused by the presence under the slab of unsuitable fill containing organic materials * * * which over the years has deteriorated. This deterioration has created voids, which precipitated the collapse of the basement slab”.
The plaintiffs filed a claim, which INA refused, citing exclusion T (settling). INA did not mention exclusion 0 (earth movement), even after the plaintiffs’ attorney specifically requested information on any other bases for not honoring the claim. After the plaintiffs filed this lawsuit, INA claimed that exclusion 0 also applied.
It is well established that contracts of insurance are to be construed according to the sense and meaning of the terms used by the parties. If the terms are not ambiguous, they aré to be taken in their ordinary and proper sense. (Hartol Prods. Corp. v Prudential Ins. Co. of Amer., 290 NY 44, 47.) On the other hand, “[i]t is well-settled that if a policy of insurance is written in such language as to be doubtful or uncertain in meaning, all ambiguity must be resolved in favor of the policy holder and against the company * * * the burden was on [the insurance company] to establish that the words and expressions used not only are susceptible of the construction but that it is the only construction that can fairly be placed thereon.” (290 NY, at p 49.) “ ‘[insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so *327 plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import’ ” (290 NY, at p 50).
If the term is capable of more than one meaning, the doubt in the exclusionary clause must be resolved in favor of the insured. For the defendant to derive any benefit from the exclusionary clause, it was obliged to show that (1) it would be unreasonable for the average man reading the policy to give it the construction urged by the plaintiff, and (2) that its own construction was the only one that fairly could be placed on the policy. (Sincoff v Liberty Mut. Fire Ins. Co., 11 NY2d 386, 390.)
Turning first to exclusion T (settling), plaintiffs argue that the damage that occurred here is a collapse of the foundation, not a settling in foundation; or at the very least, it is ambiguous. INA, on the other hand, characterizes the damage as settling of foundations throughout its briefs and equates that with settling in foundations as excluded by the policy.
INA argues that there is no ambiguity, that the use of the word “in” in clause T has the same meaning as “of”, and that the loss was caused by earth movement which caused settling. INA asserts that the sudden collapse amounts to settling in foundations, since the fill underneath deteriorated, leaving a void into which part of the foundation fell. We believe that this could more properly be characterized as a collapse o/the foundation.
INA’s contention that there is no difference between the meaning of “in” and “of” does violence to the English language. (See Webster’s Third International Dictionary.) If INA meant “of”, it could have used that word. But the use of the word “in” removes this factual situation from the exclusionary clause; the damage was caused by the basement slab collapsing into a void, not by settling in foundations.
Even assuming, arguendo, that the choice of prepositions were legally unimportant, we believe that the collapse which occurred here cannot come within the meaning of the word “settling” in exclusionary clause T. INA argues that words are to be construed in their ordinary and *328 popular sense, and that “settling” has a “general meaning of a gradual sinking of a building”. (Defendant’s reply brief, p 5; emphasis added; accord Sabella v Wisler, 28 Cal Rep 277, 281.) As applied to houses, settling has a different connotation, that of a building initially coming to rest after construction. The word is usually not applied to dramatic, massive breaks many years later caused by deterioration of organic matter under the house. It is not a house coming to rest, but a house coming out of rest. This is not a “gradual sinking” but a sudden, overnight collapse with resultant severe damage. It appears that everyone called this a “collapse”. The adjuster from the insurance company wrote in his report that “insured’s basement floor has started to collapse.” The expert opinion agreed on by the parties as the cause of the loss was that the organic material deteriorated, creating voids “which precipitated the collapse of the basement slab.” Thus, it appears that this was a collapse as ordinary people, including the insurance adjuster, thought of it. It is not necessary that the house fall down in a heap before the insured can recover. (See Travelers Fire Ins. Co. v Whaley, 272 F2d 288.)
This construction of the word “settling” is consistent with the use of the preposition “in” rather than “of”. The implication given to the average insurance buyer is that what is excluded is the normal, gradual readjustment of the building materials when it occurs in foundations, walls, floors or ceilings. If this is not what the defendant meant, then the words are ambiguous; ambiguities are to be strictly construed against the insurer, who created them (Birnbaum v Jamestown Mut. Ins. Co., 298 NY 305, 311).
The fact that the foundation collapsed and the use of the word “in” removes this case from the ambit of Graffeo v United States Fid. & Guar. Co., 20 AD2d 643, mot for lv to app dsmd 14 NY2d 685) relied on by INA. In Graffeo (p 643), the exclusion was for loss due to “settling * * * of pavements, foundations, walls, floors or ceilings; unless loss by * * * collapse * * * ensues, and this company shall then be liable only for such ensuing loss”. The Appellate Division did not allow recovery by the plaintiff because “there was not a ‘collapse’ * * * within the intendment of *329 the policy” and allowing a recovery “would do violence to other provisions of the policy”. (20 AD2d, at p 644.)
We have here a different policy. The exclusion is for settling in foundations. Collapse is not mentioned at all. Contrary to what INA claims, this policy is not more restrictive than the one in Graffeo. Since collapse was not excluded, it must be covered by this all-risk policy.
The facts in Graffeo (supra) are also quite different. There, a basement slab started to settle, but it never cracked or broke. The settling caused a pipe to break, which caused further damage. The policy excluded settling unless collapse ensued, and on the facts the court was unable to find collapse as intended by the policy. In this case, however, everyone, including the insurance adjuster and the experts, called this a collapse.
The question is whether the insured at the time of obtaining the insurance could reasonably expect that damage such as occurred here would be covered by the policy as written. The exclusionary clauses must be read in conjunction with the entire policy. A perusal of the policy shows that it contains three types of exclusions: (1) basic wear and tear, ordinary deterioration; (2) loss caused by the negligence or intent of the owner; and (3) catastrophes such as nuclear radiation, tidal waves, volcanoes, and earthquakes.
The insured, reading the policy as a whole, could reasonably believe that clause T, which refers to “settling, shrinking or expansion”, fits into the general category of ordinary deterioration or wear and tear. INA claims that the loss fits into this category. We believe that a loss of $27,500 which impairs the structural integrity of the house and renders it uninhabitable is not ordinary deterioration.
Under the Sincoff test (11 NY2d 386, 390, supra), the exclusion does not apply unless the plaintiff’s interpretation is unreasonable and the defendant’s interpretation is the only one that could be fairly used. Reasonable persons could interpret clause T as excluding ordinary wear and tear, as opposed to the kind of damage involved here. Even if either interpretation is possible, the exclusion is ambiguous and INA has not met its burden of showing that its interpretation is the only reasonable one possible.
*330 Alternatively, INA asserts that exclusion 0 applied, arguing that this loss was caused by earth movement. Exclusion O, involving losses due to “mudflow, volcanic eruption, earthquake, landslide, or any other earth, boulder or rock (including falling rock) movement” falls within what can be called catastrophes.
In interpreting a word or phrase, one must look to the context. It is a commonly known fact of language that words take on different meanings in different settings. The question here, as before, is what did the parties intend the words to mean; specifically, what did the insured understand the words to mean. When the parties “entered into a contract intended for the protection of the insured by the insurer * * * the propriety of giving effect to the purpose of the contract to give protection to the insured tips the scales in his favor and calls for a construction against the insurer which will give the fullest protection possible to the interests of the insured” (29 NY Jur, Insurance, § 618, p 609).
Exclusion O excludes sudden catastrophic events that normally affect more than one plot of land — earthquake, volcanic eruption or landslide. In that context, a reasonable person would assume that the phrase “or any other earth, boulder, or rock (including falling rock) movement” means that the policy excluded sudden earth movement on a large scale. Deterioration of the fill below one house is certainly not large-scale earth movement. Moreover, INA, in the agreed statement of facts, has conceded that the deterioration of the fill beneath the foundation was not sudden but occurred “over the years”. We believe that the damage to the plaintiffs’ house was not caused by “earth * * * movement” in the sense of the exclusion. This conclusion is supported by the actions of INA, who did not even raise this exclusion until it answered the complaint. That is clear evidence that INA itself did not contemplate that “earth movement” included the decomposition of organic matter of a period of years.
Bailey v Hartford Fire Ins. Co. (565 F2d 826) relied on by INA, is distinguishable both on the facts of the loss and the words of the policy. In Bailey, the court reversed the granting of summary judgment in favor of the insurer *331 because of a factual dispute as to (1) whether the damage done to the insured’s home as a result of a rupture in the retaining wall, which rupture removed the lateral support from the foundation constituted a “collapse” within the meaning of the policy and (2) whether there was any “earth movement” within the intendment of one of the exclusionary clauses of that policy. The court in Bailey, in a footnote (p 829, n 3), stated “Although the language of the policy refers to ‘any earth movement,’ there remains some question whether the doctrine of ejusdem generis limits the term to violent earth disturbances such as earthquake, volcanic eruption, landslide, etc.” The case cited by the Bailey court, viz., Gullett v St. Paul Fire & Mar. Ins. Co. (446 F2d 1100, 1103), specifically held that the phrase “or other earth movement” is limited “to the prior types of earth movement specified in [the] exclusion [earthquake, volcanic eruption, landslide]”. Thus, the Bailey case supports the court’s view that exclusion 0 excludes catastrophic events not present in the case at bar.
For all of the above reasons, the court concludes that the loss sustained by the plaintiffs was covered by the policy issued by defendant.