**T.R. JONES, Appellant,**

v.

**The ST. PAUL INSURANCE COMPANY, Appellee.**

No. 13–86–274–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 11, 1986.

On Rehearing Jan. 22, 1987.

B. R. Dossett, Jeffrey W. Jones, Johnson & Davis, Harlingen, for appellant.

Charles Hury, Atlas & Hall, McAllen, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

KENNEDY, Justice.

This is an appeal by T.R. Jones in a suit brought by him to recover under an insurance policy, after the roof of his commercial building fell in. Appellee, St. Paul Insurance Company, pleaded three specific exclusions in the policy: earth movement; inherent or latent defects; and settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, roofs, or ceilings. When both sides had concluded their presentation of evidence, the court submitted only the earth movement exclusion as "Question 1." Three other special issues inquired as to damages. No definition of earth movement was given by the court.

The jury answered Question 1, in handwriting, "Earth movement was a cause of the buildings (sic) collaspe (sic)." The jury also answered the damage issues, finding a net loss of $165,000 and attorney fees of $20,000 for the appellant. The court entered a take-nothing judgment in favor of appellee, apparently based on the jury's answer to Question 1.

Appellant raises eight points of error. Several complain of the manner in which the court submitted the case to the jury. Appellant also contends the court erred in denying his motions for judgment notwithstanding the verdict and for new trial. We will first consider the controlling issue in the case: whether the "earth movement" exclusion in the insurance policy was properly submitted to the jury.

In general, a contract will be construed as written, in order to give effect to the intent of the parties. *Blaylock v. American Guarantee Bank Liability Insurance Co.*, 632 S.W.2d 719, 721 (Tex.1982); *see R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980); *Maples v. Erck*, 630 S.W.2d 488, 490 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.

e.). An unambiguous contract will be construed as written, the writing alone indicating the parties' intent. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 728 (Tex.1981). However, if the language of the insurance contract is ambiguous, that is, susceptible to more than one interpretation, we must adopt the construction urged by the insured. *Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex.1977); *Southern Farm Bureau Casualty Insurance Co. v. Adams*, 570 S.W.2d 567, 570 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *see Hardware Dealers Mutual Insurance Co. v. Berglund*, 393 S.W.2d 309, 314 (Tex.1965). This rule follows from the principle of strict construction against the insurer. *Glover*, 545 S.W.2d at 761; *see Blaylock*, 632 S.W.2d at 721.

Whether a contract term is ambiguous or unambiguous is a question of law. *R & P Enterprises*, 596 S.W.2d at 518; *O'Shea v. Coronado Transmission Co.*, 656 S.W.2d 557, 561 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Applying rules of construction to the language used in a contract is also the duty of the courts. *Republic National Life Insurance Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963); *Life Insurance Co. of North America v. Spradlin*, 526 S.W.2d 625, 628–29 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.). An issue of fact is created only if the proper interpretation remains uncertain after applying the pertinent rules of construction. *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979); *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951); *Nixon v. First State Bank*, 540 S.W.2d 817, 820–21 (Tex.Civ.App.—Corpus Christi), *writ ref'd n.r.e. per curiam*, 544 S.W.2d 378 (Tex.1976).

In appellant's third and fourth points of error, he contends that the trial court should not have submitted to the jury the issue of whether earth movement was a cause of appellant's loss. Instead, appellant contends, the court should have construed the exclusion relied on by appellee to be inapplicable where the only proof relating to earth movement was that the soil had contracted and expanded due to variations in its moisture content.

The applicable exclusion reads as follows:

This policy does not insure under this form against:

C. Loss caused by, resulting from, contributed to or aggravated by any of the following:

1. earth movement, including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising or shifting.

We initially address appellant's contention that the doctrine of *ejusdem generis* limits the scope of the term "earth movement." Under that doctrine, where words of a specific and particular meaning are followed by general words, the general words are construed to mean only the class or category framed by the specific words. *Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 272 (Tex.1944). In the exclusion before us, the opposite construction is used. The general words, earth movement, do not follow the specific words, but precede them. The doctrine of *ejusdem generis* does not apply in such a case. *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 136 S.W.2d 800, 804 (1940); *Fleming Foundation v. Texaco, Inc.*, 337 S.W.2d 846, 852 (Tex.Civ.App.—Amarillo 1960, writ ref'd n.r.e.).

Appellant also contends that the term "earth movement" as used in the above exclusion does not embrace in its scope expansion and contraction due to soil moisture variations. Because the term is ambiguous as used, appellant argues, the rule that ambiguities in insurance contracts are construed in favor of the insured should render the exclusion inapplicable. Appellee, on the other hand, argues that "earth movement" is unambiguous, and its plain, ordinary meaning within the exclusion encompasses any motion of the earth, no matter how slight.

This is a case of first impression in this state. Other jurisdictions appear to be split. Appellee relies on *Stewart v. Preferred Fire Insurance Co.*, 206 Kan. 247, 477 P.2d 966 (1970), and *Nida v. State Farm Fire & Casualty Co.*, 454 So.2d 328

(La.App.1984). In *Stewart*, virtually the same exclusion was considered. The insurer had denied coverage after the insured house sank when an abandoned mine shaft below the house collapsed. The Kansas Supreme Court ruled that the "earth movement" exclusion expressly included "earth sinking" within its scope; therefore, coverage was properly denied. The court also found the language unambiguous; it therefore refused to apply the "strict construction against the insurer" rule of construction.

*Nida* is closer to the facts of our case. There, the insured suffered loss when the foundation of his home, built in unusually "active" Moreland clay soil, cracked because of pressure put on it by motion in the soil. As in the case before us, variations in the moisture content of the soil triggered the damage. Improper construction, as in this case, was also a contributing factor. The *Nida* court held that the loss was excluded by the insurance policy's "earth movement" provision. Since the term was not defined, the court said, it should be given its ordinary, nontechnical meaning. However, the concurring opinion in that case would have held that "earth movement" meant only "relocation" of earth, not mere contracting and swelling of the soil, but would have denied recovery based on an exclusion for "settling."

Interestingly, the *Nida* court did not distinguish *Anderson v. Indiana Lumbermens Mutual Insurance Co.*, 127 So.2d 304 (La.App.1961). In that case, a different appellate court of Louisiana construed a narrower clause, which excluded loss caused by "earthquakes or other earth movements, except landslides." The court reversed an instructed verdict for the insurance company, saying that loss to a home caused by the expansion and contraction of soil was not excluded by the clause.

We find the *Stewart* case cited by appellee distinguishable on its facts. The earth clearly sank into the void left when the mine collapsed, and that occurrence fell squarely within the "earth sinking" exclusion. We also find that *Nida* does not control. While factually similar, the *Nida* case involves a much broader exclusion. The policy simply stated, "We do not cover loss resulting directly or indirectly from: 2. Earth Movement." *Nida* involved unusually active soil; it also appears to overlook, if not contradict, earlier authority in Louisiana, the *Anderson* case. *Nida* also appears to go against the majority of jurisdictions which have considered an "earth movement" exclusion.

In *Wisconsin Builders, Inc. v. General Insurance Co. of America*, 65 Wis.2d 91, 221 N.W.2d 832 (1974), an exclusionary clause almost identical to the one before us was considered in the context of a jury charge. The trial court had instructed the jury that "earth movement" meant "any movement of earth 'whether it be up, down or sideways.'" The Wisconsin Supreme Court held that this definition was too broad and reversed. The *Wisconsin Builders* holding was followed in *Mattis v. State Farm Fire & Casualty Co.*, 118 Ill. App.3d 612, 73 Ill.Dec. 907, 454 N.E.2d 1156 (1983), in which another, almost identical exclusion was construed to be inapplicable in a situation where the basement wall of a building cracked inward about 3½ inches due to "settlement and consolidation" of earth in the hill outside the wall. In *Government Employees Insurance Co. v. De James*, 256 Md. 717, 261 A.2d 747 (1970), the same exclusion was also held inapplicable by construing the clause to apply only to *unusual* movement of the types specified. *See also Gullett v. St. Paul Fire & Marine Insurance Co.*, 446 F.2d 1100, 1103–04 (7th Cir.1971); *United Nuclear Corp. v. Allendale Mutual Insurance Co.*, 103 N.M. 480, 709 P.2d 649, 652–53 (1985); *Barash v. Insurance Co. of North America*, 114 Misc.2d 325, 451 N.Y. S.2d 603, 607 (Sup.Ct.1982); *Holy Angels Academy v. Hartford Insurance Group*, 127 Misc.2d 1024, 487 N.Y.S.2d 1005, 1007 (Sup.Ct.1985). *But cf. Wyatt v. Northwestern Mutual Insurance Co.*, 304 F.Supp. 781 (D.Minn.1969).

The evidence in the case before us was conflicting on whether or not the roof's collapse was caused by soil moisture variations or some other cause. Evidence also conflicted on whether any significant varia-

tion in the soil moisture even occurred. What evidence there was to support appellee's "earth movement" theory came from appellee's two experts. Carroll "Stoney" Kirkpatrick testified that the main cause of the roof's collapse was improper construction; however, the "trigger," after the building had stood for thirty years, was probably perimeter foundation movement. Mr. Kirkpatrick also agreed, however, that high winds would have been a more likely trigger. He acknowledged that, in forming his conclusion, he did not study any rainfall or wind speed records for the time when the loss occurred.

Dr. Harry Jones, appellee's other expert, also testified that the building fell because the arches which framed the roof had inadequate support. The walls were too far apart, meaning only about three inches of arch sat on the support columns in the walls. Dr. Jones said that soil moisture changes, leading to a settling in the foundation, probably triggered the collapse. Although high winds would have been a more likely cause, Jones said, the weather data he studied showed no high winds during the time of the loss. However, his data showed a very dry period followed by an unusually wet period during that time. In addition, Jones stated that no other environmental factor could have been the cause. Jones also said that the wall had moved only about one-half inch at the top, but that this would have been enough to cause the collapse, because of the improper spacing of the walls. He said several times that a half-inch of movement in the walls was not an unusual amount of movement. In addition, Jones' deposition testimony that he did not see any abnormal amount of soil movement was read into evidence.

■ We find that the evidence does not show that any earth movement occurred which would come within the policy's exclusion. Appellee contends that, under the express terms of the exclusion, earth movement is not limited to the specific examples listed, and that *any* movement of the earth excludes coverage. Appellee also contends that earth movement only has to contribute to or aggravate any other cause to exclude

coverage. However, a fair reading of the testimony, specifically that favorable to appellee, is that the movement of the wall, which caused the collapse, resulted from settling in the building's foundation. Although the settling testified to may have occurred when the soil contracted as it dried, this simply is not "earth movement" as contemplated by the policy. The earth movement exclusion contemplates abnormally large movements such as the examples listed.

A contract must be construed to give effect to all its provisions, if possible, and a construction will not be placed on one provision if it causes another to be meaningless. *See Blaylock v. American Guarantee Bank Liability Insurance Co.*, 632 S.W.2d 719, 722 (Tex.1982); *Maples v. Erck*, 630 S.W.2d 488, 490 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Another exclusion pleaded by appellee was settling, cracking, or other defect of foundations. This "settling" exclusion would be rendered meaningless by adopting the construction of "earth movement" urged by appellee.

We must also strive to apply the construction which the parties placed on the provision. *See Consolidated Engineering Co. v. Southern Steel Co.*, 699 S.W.2d 188, 192–93 (Tex.1985); *Alkas v. United Savings Association of Texas, Inc.*, 672 S.W.2d 852, 858 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). A memo from John R. Watts, the investigating insurance adjustor, to his supervisor was read into evidence. His research and consultation with his expert Mr. Kirkpatrick caused him to report that a distinction existed between "earth movement and soil variations due to moisture stress." He also reported, regarding the earth movement exclusion, "This is not applicable, as the loss was due to improper [wall] spacing and not earth movement." The memo concluded that the proper exclusion was exclusion D, which listed, among other exclusions, the provisions regarding inherent and latent defects and settling of foundations. Mike Willshire, Watts' supervisor, also testified that appellee had decided to proceed under exclusion D and pay $85,000 to appellant for

the portion of the loss covered. This testimony supports a conclusion that appellee had placed a different construction on the earth movement exclusion prior to trial. *See Barash v. Insurance Co. of North America,* 114 Misc.2d 325, 451 N.Y.S.2d 603, 607 (Sup.Ct.1982).

The sole policy exclusion submitted to the jury did not apply, as a matter of law. The record does not show that appellee requested any issues on the other pleaded exclusions in the policy. However, we have unchallenged jury findings as to appellant's damages. Accordingly, the judgment of the trial court is reversed, and judgment is rendered for appellant in the amount of $165,000, the amount of net loss suffered by appellant, less the $85,176.00 already paid by appellee, plus attorney fees in the amount of $20,000.

BENAVIDES J., not participating.

### OPINION ON MOTION FOR REHEARING

KENNEDY, Justice.

Both appellant and appellee have filed motions for rehearing in this cause. Appellee raises no arguments which it did not advance on original submission. Its motion for rehearing is overruled.

Appellant's motions for rehearing and for correction of judgment request that we grant judgment in his favor for prejudgment and postjudgment interest. Tex.R. App.P. 80(b) authorizes this Court to reverse the judgment of the court below and render the judgment that the court below should have rendered. Appellant included in its second amended petition a prayer for "interest, both before and after judgment, at the highest legal rate." Appellant is entitled to prejudgment interest as a matter of right from the date the insurance company denied liability. *See Smith v. National Resort Communities, Inc.,* 585 S.W.2d 655, 660 (Tex.1979); *Republic National Bank v. Northwest National Bank,* 578 S.W.2d 109, 116 (Tex.1979); *Miles v. Royal Indemnity Co.,* 589 S.W.2d 725, 736–37 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Appellant is also entitled,

by statute, to postjudgment interest. *Golden v. Murphy,* 611 S.W.2d 914, 916 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); Tex.Rev.Civ.Stat.Ann. art. 5069—1.05 (Vernon Supp.1986).

Accordingly, appellant's motion for rehearing is granted, and judgment is rendered that appellant recover, in addition to the damages set forth in our original opinion, prejudgment interest at the legal rate, to run from March 4, 1985, the date on which appellee's first amended answer was filed. Judgment is further rendered that appellant recover postjudgment interest at the legal rate, to run from February 4, 1986.

Appellant's motion to supplement the record, filed after our original opinion was handed down, is overruled.

BENAVIDES, J., not participating.