(No. 40223.—

Bobby Ray Clark *et al.,* Appellees, *vs.* William B. Fields, Appellant.

*Opinion filed May 18, 1967.—Rehearing denied Sept. 27, 1967.*

JOHNSON, DUCEY & FEDER, of Belleville, for appellant.

KASSLY, WEIHL, CARR & BONE, of East St. Louis, for appellees.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

This action was instituted by Bobby Ray Clark and Warren H. Jordan to recover the fair market value of their airplane from William B. Fields, on whose property it was when destroyed by fire. A St. Clair County jury returned a verdict for defendant on which judgment was entered following denial of plaintiffs' motion for judgment notwithstanding the verdict or a new trial. On appeal, the Fifth District Appellate Court reversed by a divided vote and entered judgment in favor of plaintiffs for $4,500. (73 Ill. App. 2d 369.) Mr. Justice Goldenhersch, dissenting, believed the evidence presented a question for the jury and would have affirmed. Defendant sought and we granted leave to appeal.

In August of 1962, plaintiffs owned a Tri-Pacer airplane, which was required by F.A.A. regulations to be inspected annually. Defendant was licensed to make the necessary inspection and had agreed to do so, apparently for the customary fee of $70-$80. Upon inspection he determined that the plane needed re-covering, as the fabric would not pass the test. As plaintiffs had neither the tools and equip-

ment nor know-how to do the job, defendant offered to supply both if they wished to do it themselves. Plaintiffs accepted this offer. The wings of the plane were removed and taken by truck to defendant's basement. Defendant towed the fuselage to his house, and it too was placed in his basement and left there during the 1962-63 winter while plaintiffs re-covered the plane. In February defendant took the fuselage to a body shop where plaintiffs painted it. After it dried, he brought it back to his house and placed it in his back yard. It was then covered, in whole or part, with a piece of plastic. Defendant did not charge for the use of his tools, his equipment or his advice.

On March 8 defendant, without using a container, burned some trash in an area in his backyard which he customarily used for this purpose. This area was about 15 to 20 feet from where the fuselage stood on apparently higher ground and part of the intervening area was occupied by what is variously referred to as a "ravine", "ditch" and "gulley". There was dry, apparently short, grass all through the ditch and around the plane. Portions of the fire were still smoldering when defendant's wife, who needed help moving a refrigerator, called him into the house. While he was there, his wife looked out the window and saw that the plane was on fire. When defendant reached it, the grass between the trash-burning area and the plane was burning, as was that surrounding the plane.

The fuselage of the plane was wholly destroyed. However, the wings and stabilizer were not attached to the fuselage at the time of the fire and were not damaged. The motor had some salvage value. Howard L. Gault, a dealer in planes, placed the value of the entire plane at $5,000 and the value of the fuselage at $4,700. While he felt that the wings and stabilizer were worth about $300, he said that there was not much of a market for that sort of thing. Defendant placed the value of the plane between $4,500 and $5,500. He agreed with Gault as to the value of the wings

and stabilizer and also that there was not much of a market for them. While Gault was not asked concerning the salvage value of the engine, defendant said that it was not worth more than $150. Bobby Ray Clark, the only plaintiff who testified, did not attempt to estimate the value of the plane, but did say that bids of around $300 were made for the wings.

Although plaintiff places a great deal of stress on the principles of the law of bailments, their only significance here is to create a presumption of negligence on the part of the defendant upon the showing by plaintiff of delivery of the plane to defendant and his failure to return it. (*Miles* v. *International Hotel Co.,* 289 Ill. 320, 327.) This presumption disappears upon the presentation by defendant of any evidence of his freedom from negligence. (*Miles.*) Accordingly, if the evidence presents a jury question on the issue of negligence, it necessarily follows that the presumption no longer exists. The pivotal question therefore is whether the evidence was such that the negligence issue should have been submitted to the jury. If so, the appellate court was in error in reversing the trial court; if not, the trial judge should have entered judgment *n.o.v.,* and the appellate court correctly reversed, as to liability, although the latter clearly erred in making an original determination of damages on the basis of conflicting testimony. The opinion evidence as to value of the plane ranged from $4,500 to $5,500; the undamaged wings had a value of about $300; and the salvage value of the motor could have been found to be as much as $150. While in their motion for judgment *n.o.v.* plaintiffs asked for a judgment in the amount of $4,500, this testimony could have supported a verdict of less than this amount. A jury trial of the damage issue was therefore essential. While plaintiffs cite *Saddler* v. *National Bank of Bloomington,* 403 Ill. 218, as authority for the appellate court's action, there was in that case no variance in the testimony as to the amount of damage.

We have just this term in *Pedrick* v. *Peoria and Eastern Railroad Co., ante* p. 494 discussed and clarified the principles governing the entry of judgment *non obstante veredicto,* there holding such should be done only in those cases where the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. Applying that rule to this evidence we note the absence of any proof as to wind conditions at or preceding the time of the fire. There is no direct evidence whether the trash had just been ignited, or whether the fire had just passed its peak or was nearly out when defendant left it untended, except that, when asked whether "the trash was still smoldering or burning in places," defendant answered, "It was smoldering." The height of the grass which caught fire is not shown, but the inference is that it was short since defendant testified without contradiction that "it was about the same as the grass around the house." The dimensions of the ravine, ditch or gulley between the trash and the plane were undisclosed. Although defendant answered "That's right" to the question "Did your wife call you to come in and move the refrigerator?", this testimony construed most favorably to defendant does not indicate defendant knew the reason for the call at the time it occurred; nor is there any proof as to the amount of time defendant left the fire untended. Neither is there any indication of the inflammable or noninflammable character of the fuselage, its covering or the plastic with which it was wrapped.

In the absence of more detailed proof, we believe it cannot fairly be said that the evidence so overwhelmingly establishes defendant's negligence that no contrary verdict based on that evidence could ever stand. The trial court therefore properly submitted the issue to the jury. Nor do we believe the verdict is so manifestly against the weight of the evidence that the trial court may be said to have erred in refusing to grant a new trial.

The judgment of the Appellate Court for the Fifth District is accordingly reversed, and the judgment of the circuit court of St. Clair County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*