James G. **GULLETT** and Ben Taylor, Plaintiffs-Appellees,

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**, Defendant-Appellant.

No. 18658.

United States Court of Appeals, Seventh Circuit.

July 16, 1971.

J. C. Mitchell and W. A. Armstrong, Marion, Ill., for defendant-appellant.

Richard G. Lambert, Harris & Lambert, Marion, Ill., for plaintiffs-appellees.

Before KILEY and CUMMINGS, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

KILEY, Circuit Judge.

This is a diversity suit to recover for damage to plaintiffs' building insured against loss by defendant insurance company. Judgment for $15,000 was entered on the jury's verdict[2] and defendant has appealed. We affirm.

Plaintiffs' brick veneer and concrete building in Elizabethtown, Hardin County, Illinois, was occupied by a United States Post Office. About three feet slightly "up" from the north side of the building and running parallel to it was an eighty-two year old retaining wall made of "large rocks or boulders." It was approximately seventy-eight feet long, two and a half feet thick, and

1. Senior Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

2. By stipulation the case was tried before a six member jury.

page number

twelve feet high. Behind this wall to the north and abutting against it was an embankment of earth level on top and about the same height as the wall. On January 29, 1969, around 11:15 p. m., rocks from portions of the wall crashed into the building causing serious damage.

The vital jury question was whether the damage to the building was caused by "falling objects" or "collapse of building" and thus covered by the terms of a rider to the policy;[3] or whether it was caused by a "landslide or any other earth movement" and excluded from coverage.[4] On defendant's motion, the court submitted a special verdict asking the jury to decide these questions.[5] The jury answered that the damage was caused by falling objects or collapse of building; that it was not caused or aggravated by, was not contributed to, and did not result from a landslide or any other earth movement; and returned its verdict for plaintiff.

## I.

Defendant moved at trial for directed verdict at the close of plaintiffs' evidence, and again at the close of all the evidence. The court denied the motions and also denied defendant's subsequent motion for judgment notwithstanding the special verdict. The defendant contends that the rulings were erroneous and argues that the only reasonable inference from the evidence is that the loss was caused by a landslide moved by surface or underground water and accordingly excluded under the policy. We disagree.

The Circuits are in conflict as to whether a state or a federal standard applies to test rulings on motions for directed verdicts or judgments notwithstanding verdicts in diversity cases.[6] The disagreement stems from the substance-procedural dichotomy of Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

This court has traditionally applied the state standard. Wieloch v. Rogers Cartage Co., 290 F.2d 235, 237–38 (7th Cir. 1961). That policy was reaffirmed several months ago in Illinois State Trust Company v. Terminal R. R. Assoc., 440 F.2d 497 (1971). Illinois substantive law controls this action, and the pertinent law was changed in 1967 in Pedrick v. Peoria & E. R. R., 37 Ill.2d

---

3. Item 4 "Perils Insured Against" of the Building * * * is extended to include the following perils. * * *
   1. Falling Objects: * * *
    *    *    *    *    *
   3. Collapse of Building(s): * * *

4. EXCLUSIONS: This Company shall not be liable for:
   *    *    *    *    *
   B. Loss caused by, resulting from, contributed to or aggravated by any of the following:
    (1) earthquake, volcanic eruption, landslide or any other earth movement, but this exclusion shall not apply to property in transit;
    (2) flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not, but this exclusion shall not apply to property in transit;
    (3) water which backs up through sewers or drains;
    (4) water below the surface of the ground including that which exerts pres-

sure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors;
unless loss by fire or explosion as insured against hereunder ensues, and then this Company shall be liable for only such ensuing loss.
    *    *    *    *    *

5. The theory of defendant's case was that the damage to plaintiffs' building fell within the exclusions (1), (2) and (4) of the policy (supra n. 4). Its instructions however on exclusions (2) and (4) were refused and only the instruction on exclusion (1), "landslide or any other earth movement" was given to the jury.

6. An authoritative listing of cases can be found at 5 Moore's Federal Practice ¶ 50.06 at 2347–48 nn. 5 and 6 (2d ed. 1969); see e. g., Boeing Co. v. Shipman, 411 F.2d 365, 368 n. 2 (5th Cir. 1969).

494, 229 N.E.2d 504 (1967), where the court stated:

> * * * verdicts ought to be directed and judgments *n. o. v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.

37 Ill.2d at 510, 229 N.E.2d at 513–14. Thus, under the current Illinois rule[7] the district court's denial of appellant's motions was correct unless upon all of the evidence viewed in its aspect most favorable to the plaintiffs the testimony favoring the defendant is so overwhelmingly against plaintiffs that a verdict for them cannot stand. The crucial fact question at trial was whether the rocks fell first from disintegration of mortar and pressure of the earth and the earth then pushed the rocks, or whether the earth, moved by rain water, forced the wall to collapse and the collapse caused the rocks to crash onto the building.

The record contains non-expert testimony that the rock wall was somewhat above plaintiffs' building; that there was an "above normal" rainfall two or three days before the event with "considerable" water issuing between the rocks in the wall; that there was about a six inch bulge in the center of the length of the wall starting halfway up and going to the top; that plaintiffs had spoken to defendant's representative Rutherford about their fear of "the wall falling on us" and the response was that the rider would be added to the policy to "take care of it if the wall fell;" and that portions of the wall fell on the building.

There is no substantial contrariety in the expert testimony for both parties about the condition of the rock wall. Examination of the eighty-two year old rock retaining wall, after the event, showed the wall had weakened; the mortar sealing the large rocks had deteriorated in the "area that failed;" there were openings between rocks especially at the top where the mortar was "in pretty bad shape * * * washed out * * * and in some places * * * patched * * * on the outside with plaster." The wall had "very little strength;" all that held the rocks in place was their own weight, and it would not, in an engineering sense, qualify as a retaining wall.

Defendant argues that the overwhelming evidence is that "surface water" played some part in causing the wall to fall. There is testimony that rain water in the street a block below plaintiffs' building was about a foot deep; that the two or three day rainfall was "above normal;" that the earth behind the wall was wet and damp; and that the rain added weight against the wall. In light of the ejusdem generis rule,[8] we do not consider this testimony as proof of "surface water," as that term is used in exclusion (2). Furthermore, with respect to "water underground" in exclusion (4), the testimony relied on by defendant is largely from answers to abstract or hypothetical questions. No expert had seen the earth during or immediately after the event.

The uncontroverted testimony as to the movement of the earth literally falls within the last term of exclusion (1): "earthquake, volcanic eruption, landslide or *other earth movement.*" (Emphasis added.) The ejusdem generis rule, however, limits that general term to the prior types of earth movement specified in that exclusion.

---

**7.** This rule is a departure from the earlier "any evidence" test, Mirich v. T. J. Forschner Contracting Co., 312 Ill. 343, 143 N.E. 846 (1924). The possibility of confusing this rule with the manifest weight of evidence rule used in the trial courts to set aside verdicts contrary to the weight of evidence has been commented upon in 56 Ill.B.J. 782, 786 (1968). *See also* Clark v. Feld, 37 Ill.2d 583, 229 N.E.2d 676 (1967).

**8.** *See e. g.*, Anderson v. Indiana Lumbermen's Mutual Ins. Co., 127 So.2d 304, 306 (La.App.1961).

We conclude there is no merit in defendant's contention that it was entitled to a directed verdict or judgment notwithstanding the verdict. In our opinion the jury could well find that what probably happened to the earth in this case was not a "landslide" within the exclusion; it could have concluded that neither a "landslide" nor "surface water" nor "water underground" contributed to or caused the loss, if it believed plaintiffs' experts that the weakened wall "caved" in from normal deterioration, prior to the earth moving. Surely what occurred is a mini-earth movement compared to the Los Angeles "landslide" described by the court in Gen. Ins. Co. of America v. Lapidus, 325 F.2d 287 (9th Cir. 1963). No expert witness in testifying referred directly to the probable movement of the earth as a "landslide." Defendant's expert estimated that there were forty thousand pounds of earth inside the rock wall. But there is no testimony that the estimated forty thousand pounds of earth moved against the wall.

The *Lapidus* decision does not compel a decision here that the occurrence was a "landslide." There is a difference between a movement of earth on the side of the Los Angeles hill in *Lapidus* and the movement of the earth here. The evidence justified a jury inference that the weakened wall collapsed through normal deterioration and the falling rocks then crashed into the building causing the damage. This inference would support the special verdict.

II.

A. We see no merit either in the contention that the court erred in denying defendant's alternative motion for new trial. The only difference between the experts is in their opinions on the crucial concrete factual question.[9] One of plaintiffs' experts gave his opinion that the "topmost part of the wall" had started to fall due to the deterioration of the mortar; and that the natural pressure of the earth on the wall caused the rocks to break loose and this "caved the wall in." Another of plaintiffs' experts stated his opinion was that first the wall had given way, had fallen over into the building, and some dirt had moved down behind the building; and that the rain had added weight against the deteriorated wall causing it to fall. Defendant's expert's opinion was that the rain reduced the earth to a somewhat fluid state and exerted a "hydrostatic force" which caused the wall to fall allowing the rocks to crash into plaintiffs' building.

The essential difference in the expert testimony is that in the view of plaintiffs' experts the wall *first* gave way and this permitted the earth to push the rocks onto the building; whereas in the view of defendant's expert the force of the "fluid" earth *first* pushed the wall away and then pushed the rocks onto the roof. Defendant's expert said the earth and wall had been there in repose for eighty-two years and could have remained another eighty-two years unless the new force—the rain—had been introduced. He also said the wall "could have gone" at any prior occasion if the same amount of rain had fallen within the wall.

We think that the expert testimony and our discussion and conclusion under Part I of this opinion clearly show that at best for defendant the jury could have found for either party on the evidence as a whole and that the district court could correctly decide the verdict was not against the manifest weight of the evidence.[10]

9. All experts agreed that if rain reduced dirt to a "fluid state," the dirt would lack cohesion and move laterally downward until it found an "angle of repose" where the force of the moving earth was less than or equal to the resistance of a wall designed to hold the dirt.

10. *See* Clark v. Feld, 37 Ill.2d 583, 229 N.E.2d 676 (1967), for the distinction between the Illinois tests for rulings on motions for directed verdicts and for new trials.

■ B. In argument plaintiffs' counsel, over objection, said with respect to the special verdict submitted to the jury, "We ask you to answer that first question 'Yes' and to answer that second question 'No,' that these men might be paid the insurance company money to which they are entitled." Defendant claims this argument about the legal effects of the jury answers was "most egregious error."[11] This is not an erroneous insinuation into the case of a non-party insurer. The insurer here is the named defendant. In Thedorf v. Lipsey, 237 F.2d 190 (7th Cir. 1956), this court held no error was committed by refusal of the court to advise the jurors, at their request, upon the legal effect of a finding of equal negligence on the part of the litigants. That case does not control our decision on this point. The purpose of a special verdict is to concentrate the jury's attention exclusively upon the fact questions put to them. Comment on the legal effects of the answers could in an appropriate case have a prejudicial effect of clouding this purpose. Plaintiffs' counsel should have limited his argument to urging answers to the questions on the facts. However, we find no "most egregious error" requiring reversal.

■ C. Defendant claims error in refusal to give its proffered instructions Nos. 3, 4, 5, 6 and 7. Instruction No. 3 referred to exclusions "(2) and (4)," "surface water" and "water below the surface," respectively, but there is no evidence of either type water. The evidence is limited to rainfall. The same applies also to instructions Nos. 4 and 5. Instructions Nos. 6 and 7 also refer to types of water not in evidence. Defendant's claim is based on its interpretation of evidence of "above normal" rainfall, or "two days of rain" as "water problem," "hydrostatic forces," "surface water," or "water below the surface." The interpretation is not justified.

■ D. Finally, defendant claims reversible error in admission of testimony of plaintiffs covering the conversation with witness Rutherford with respect to plaintiffs' fear of the wall falling on the building. Rutherford had written insurance for the defendant for about ten years. He sold the policy to plaintiffs. He had talked with the plaintiffs about their fear of the wall falling down. Even if Rutherford was not defendant's agent and could not bind defendant under the terms of the policy —which we do not decide—we see no prejudice in the ruling. The rider which Rutherford told plaintiffs would issue, did issue and became part of the policy. Furthermore, defendant's questions referred to the plaintiffs-Rutherford conversation and elicited from plaintiffs the response that Rutherford had "got the policy to your [plaintiffs'] liking * * * and said * * * the policies now covered the wall."

We find no reversible error in the court's various rulings complained of. For the reasons given, the judgment is affirmed.

---

11. We shall not consider defendant's argument that a remark of the judge to the jury aggravated the claimed error. That remark was not relied on in defendant's motion for new trial.