**PEACH STATE UNIFORM SERVICE, INC., Plaintiff-Appellant,**

v.

**The AMERICAN INSURANCE COMPANY, Defendant-Appellee.**

No. 73–3720.

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1975.

E. A. Simpson, Jr., Richard H. Sinkfield, Atlanta, Ga., for plaintiff-appellant.

Sam F. Lowe, Jr., Atlanta, Ga., for defendant-appellee.

Before RIVES, GEWIN and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

On the night of July 30, 1971, after heavy rains, part of the foundation of the Peach State Building in Atlanta, Georgia, gave way and a portion of the building collapsed. Peach State Uniform Company (Peach State), the tenant of the building and plaintiff in this diversity case, lost personal property in the disaster. In time Peach State brought this suit to recover its losses from defendant American Insurance Company (American), with whom it had an "all-risk" insurance policy covering the building.

Trial came on before a jury. American attempted to prove that the undermining and consequent tumble of the Peach State Building proximately resulted from the work of run-off water washing away uncompacted fill dirt from underneath its foundation. Accordingly, American argued, the loss came within exclusions in the "all-risk" policy coverage regarding losses resulting from certain *earth movement* or certain *water damage.*[1] Peach State contradicted

---

1. The policy provided in part:

8. PERILS EXCLUDED:

This policy does not insure against loss or damage resulting from:

American's position on both the law and the facts. First, Peach State urged the district court to hold as a matter of law that neither exclusion in the policy fits the loss as its cause was described by American. Second, Peach State sought to show that in any case the building collapse was caused not by the tear of run-off water, but by the caving in of a portion of the Orme Street Sewer which ran directly underneath the Peach State Building.

American prevailed at the trial. The district court refused to direct a verdict in favor of Peach State and declined to instruct the jury as Peach State had requested. In its turn, the jury concluded, in answer to special interrogatories, that the loss fit within both of the exclusions relied upon by American. So determining liability, the jury did not, unfortunately, determine the amount of damages. After the jury returned its verdict, the trial court denied Peach State's motion for a judgment n. o. v., decreeing that while it was in ultimate agreement with Peach State's argument that "there is no evidence to sustain the proposition that [Peach State's] loss or damage constituted 'water damage,' within the meaning of the policy exclusion," judgment would nevertheless be entered upon the verdict that American was excused from liability under the *earth movement* exclusion. Peach State appeals. We conclude that as a matter of law Peach State's loss comes within neither policy exclusion; consequently, we reverse the judgment entered below and remand for a new trial on damages alone.[2]

We think the district court was correct in its view that Peach State's loss was not excluded from coverage as resulting from *water damage* as that term is used in the contract. While the term *water damage* may be used in the abstract to refer to any sort of damage worked by water or the motion of water, *see, e. g.*, Pickering Construction Co. v. Liberty Mutual Fire Insurance Co., 1965, 111 Ga.App. 210, 141 S.E.2d 165, 166, here we must take the phrase in context, not in the abstract. The insurance contract between Peach State and American provides in relevant part:

PERILS EXCLUDED:

This policy does not insure against loss or damage resulting from:

. . . . .

(N) *Water damage* caused by, contributed to, or aggravated by any of the following:

> (1) Flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing

. . .,

> (2) Water which backs up through sewers or drains,
> (3) Water below the surface of the ground . . . . [emphasis added]

American would read exclusion (N) to refer to any sort of damage stemming from the enumerated water sources. This reading would effectively eliminate the adjective *water*, leaving an exclusion for any "loss or damage resulting from

---

. . . . .

(B) Earthquake, volcanic eruption, landslide or other earth movement (This exclusion does not apply to property in transit);

. . . . .

(N) Water damage caused by, contributed to, or aggravated by any of the following: (1) Flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing; (this exclusion does not apply to property in transit), (2) Water which backs up through sewers or drains,

(3) Water below the surface of the ground, including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any openings in any of the above. . . .

**2.** Since our construction of the policy language resolves this case in favor of Peach State, we pretermit consideration of Peach State's argument on concurrent causation.

. . . *damage* caused by, contributed to, or aggravated by . . . [f]lood, . . . [w]ater which backs up . . [or] [w]ater below the surface of the ground. . . ." A clause on this pattern is frequently threaded into insurance policies,[3] but it is not the clause Peach State had here. We think it clear that the term *water damage* in this context constitutes a limitation on the sorts of damages from the enumerated waters which were excluded from coverage. Peach State suggests that for the term *water damage* to be given any meaning as such a limitation, clause (N) must be read as referring to such harms as staining, rusting, or other incidents of the chemical presence of water, and not to the strictly kinetic effects of moving water. The manifest reasonability of this reading of clause (N), attributing, as it does, some sense to each word, convinces us, as it did the district court, that the provision is at least ambiguous. We are bound by the Georgia law to resolve such ambiguity against the insurer.[4] Accepting, therefore, the limiting construction put on the exclusion by Peach State, after a careful review of the record we affirm the district court's conclusion that there was no evidence to show that Peach State's loss fit within the *water damage* exclusion, properly construed.[5]

▮▮▮ We conclude that Peach State was also entitled to a judgment n. o. v. that its loss did not fall within exclusion (B) of its contract with American. That clause provides:

PERILS EXCLUDED:

This policy does not insure against loss or damage resulting from:

(B) Earthquake, volcanic eruption, landslide or other earth movement . . . .

No reported Georgia decision has confronted this precise policy language.[6] In accordance with the authority from other jurisdictions, however, we think the phrase *other earth movement* is ambiguous in its usage and application here and thus turn to the principle of *ejusdem generis* to facilitate construction of the exclusion.[7] As the Court of Appeals of Georgia has articulated that doctrine in construing an exclusionary clause in an insurance policy:

"Where general words are followed by a description of specified subjects, the meaning of the general words ordinarily will be presumed to be limited to the enumerated special subjects, and to include only those things of the same nature as those specially enumerated, unless a clear manifestation of a contrary intent appears." Jenkins v. Jones [1953], 209 Ga. 758, 761, 75 S.E.2d 815, 818; Beck v. Wade (1959), 100 Ga.App. 79, 82, 110 S.E.2d 43, 46. State Farm Fire & Casualty Co. v. Rowland, 1965, 111 Ga.App. 743, 143 S.E.2d 193, 196–197.[8] There is no clear mani-

---

**3.** *See, e. g.,* Arjen Motor Hotel Corp. v. General Accident Fire & Life Assurance Corp., 5 Cir. 1967, 379 F.2d 265; American Insurance Co. v. Guest Printing Co., 1966, 114 Ga.App. 775, 152 S.E.2d 794, 795.

**4.** Ga.Code.Ann. § 20–704(5); State Mutual Life Assurance Co. v. Dorsey, 5 Cir. 1966, 357 F.2d 600, 602 (Georgia law); Davis v. United American Life Insurance Co., 1959, 215 Ga. 521, 111 S.E.2d 488, 492; Burke v. Life Insurance Co., 1961, 104 Ga.App. 865, 123 S.E.2d 426, 430.

**5.** American acknowledges that the burden was upon it to prove that Peach State's loss fell within the policy exclusions.

**6.** *Cf.* Underwood v. United States Fidelity & Guaranty Co., 1968, 118 Ga.App. 847, 165 S.E.2d 874.

**7.** *Accord,* Gullett v. St. Paul Fire & Marine Insurance Co., 7 Cir. 1971, 446 F.2d 1100, 1103; *see* Souza v. Corvick, 1971, 142 U.S. App.D.C. 323, 441 F.2d 1013, 1021; Wyatt v. Northwestern Mutual Insurance Co., D.Minn. 1969, 304 F.Supp. 781; Anderson v. Indiana Lumbermens Mutual Insurance Co., La.App. 1961, 127 So.2d 304, 308; Government Employees Insurance Co. v. DeJames, 1970, 256 Md. 717, 261 A.2d 747, 752. As to the policy language in Underwood v. United States Fidelity & Guaranty Co., 1968, 118 Ga.App. 847, 165 S.E.2d 874 and Stewart v. Preferred Fire Insurance Co., 1970, 206 Kan. 247, 477 P.2d 966, *see* the discussion in *Stewart, supra* at 969, and *compare Souza, supra*; *Wyatt, supra*, and *DeJames, supra*.

**8.** *See also* Beavers v. LeSueur, 1939, 188 Ga. 393, 3 S.E.2d 667, 673; Hamlin v. Timberlake Grocery Co., 1974, 130 Ga.App. 648, 204 S.E.2d 442, 444.

festation here of an intent not to limit the general term *other earth movement* in this policy to events of the same nature as earthquakes, volcanoes, and landslides.[9] Taking the phrase in its contractual context, then, and continuing to resolve ambiguity in favor of the insured, we read *other earth movement* as referring only to phenomena related to forces operating within the earth itself, and not to the merely superficial effects of external forces, such as erosion by run-off rainwater.[10] There is no evidence on this record that Peach State's loss might have resulted from hydrostatic pressures or other forces working within the earth itself.[11] The construction of this ambiguous exclusion, like the water damage exclusion, was for the district court,[12] and in view of the lack of evidence to show that Peach State's loss resulted from *earth movement*, properly construed, Peach State was entitled as a matter of law to a judgment in its favor on the applicability of exclusions (B).

The inclusions and exclusions of an insurance policy do not always embroider a neat design. Our duty is to apply only enough judicial stitchery to the parties' material to piece together a coherent pattern. In this role we do not construct a policy out of whole cloth, nor weave threads into the fabric which the parties themselves have not included. Where a stitch or two may have been dropped in executing the exclusionary trim, it goes against the tailor, the insurance company. The policy exclusions here do not fit every confluence of water and earth; the final fashion that emerges is not appropriate to every event. We determine simply that Peach State Building was well enough covered for the occasion.

We thus conclude that the district court erred in denying plaintiff Peach State's motion for judgment n. o. v. on the issue of American's liability. Accordingly, we reverse the judgment entered below, and remand the cause for a trial on the question of damages.

**9.** *Compare, e. g.*, the *earth movement* clause invoked in Olmstead v. Lumbermens Mutual Insurance Co., 1970, 22 Ohio St.2d 212, 259 N.E.2d 123, 125.

**10.** *Accord*, Souza v. Corvick, 1971, 142 U.S.App.D.C. 323, 441 F.2d 1013, 1021; *see* General Insurance Co. v. Lapidus, 9 Cir. 1963, 325 F.2d 287, 290; *cf.* Gullett v. St. Paul Fire & Marine Insurance Co., 7 Cir. 1971, 446 F.2d 1100, 1103–1104; Anderson v. Indiana Lum-

bermens Mutual Insurance Co., La.App.1961, 127 So.2d 304, 308; Government Employees Insurance Company v. DeJames, 1970, 256 Md. 717, 261 A.2d 747, 752.

**11.** *Cf., e. g.*, Gullett v. St. Paul Fire & Marine Insurance Co., 7 Cir. 1971, 446 F.2d 1100, 1103–1104.

**12.** *See* Goodwin, Inc. v. City of Lafayette, 5 Cir. 1969, 418 F.2d 698.