In re STENERSEN
CORPORATION, (Debtor).

STENERSEN
CORPORATION, (Appellant),

v.

Louis O. GIUFFRIDA, Director of Federal Emergency Management and The Federal Emergency Management Agency, (Appellees).

Bankruptcy No. 81–2–3237.
Adv. No. 82–1466–B.
Civ. A. No. M–84–1955.

United States District Court,
D. Maryland.

April 8, 1986.

Gary A. Goldstein, Robert A. Gordon, and Goldstein, Rubenstein & Sher, P.A., Baltimore, Md., for appellant.

Breckinridge L. Willcox, U.S. Atty. for the District of Maryland, William D. Quarles, Asst. U.S. Atty., Baltimore, Md., and Susan Kantor Bank, Asst. Gen. Counsel, Federal Emergency Management Agency, Washington, D.C., for appellees.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

On March 13, 1984, United States Bankruptcy Judge James F. Schneider, after considering the evidence presented at the trial of this case, denied appellant, Stenersen Corp., relief under its Standard Flood Insurance Policy ("SFIP") with the Federal Emergency Management Agency ("FEMA") (Bankruptcy Paper No. 29). Stenersen Corp. filed a Notice of Appeal (Bankruptcy Paper No. 30), and appellees, Louis O. Giuffrida and FEMA, of which Giuffrida is the Director, filed a Notice of Cross-Appeal (Bankruptcy Paper No. 31). Both parties filed their statements of issues and designations of contents for inclusion in the record on appeal (Bankruptcy Paper Nos. 32, 33).

In accordance with Bankruptcy Rule 8009, the appellant and the appellees have filed their respective briefs (Paper Nos. 4–6). In addition, the transcript of, and exhibits from, the proceedings before Judge Schneider have been filed (Bankruptcy Paper No. 28). After reviewing the record in this case and the briefs submitted by counsel, the court concludes that the facts and legal arguments are adequately presented in them and the decisional process would not be significantly aided by oral argument. Bankruptcy Rule 8012.

### I. *Factual Background*

In its Complaint (Bankruptcy Paper No. 1), appellant alleged that on September 5, 1979, a flood occurred which caused certain damage to its property.[1] Trial was conducted in this case, in which the principal issues were identified by the Bankruptcy Court as follows: "(1) whether the damage complained of by Stenersen was caused by a flood, and, therefore was 'flood-related' within the terms of the standard flood insurance policy; and (2) whether there was any compensable injury to the subject property due to the 'flood-related' damage." (Bankruptcy Paper No. 29 at 3).

After trial, the Bankruptcy Court concluded that Stenersen and the United States had executed a SFIP, Policy No. 0057–9798, for the subject property; that a flood caused by Hurricane David occurred at the subject property on or about September 5, 1979; and that the terms of the policy were in effect at the time of said flood (*id.* at 4). It further found that "the only portion of the property at issue [was] the floor of the north section of the subject warehouse"; that Stenersen had previously received certain monies as compensation for the contents of the subject warehouse and for other structural damage on the basis of the September 5, 1979 flood; and that the parties had stipulated that the compensation sought by Stenersen for the alleged damage to the north section of the warehouse is $24,351.99 (*id.* at 4–5).

The floor of the north section of the subject warehouse is a floating floor slab, comprising 8,280 square feet, and is supported by the walls of five steel compartment vaults, which walls are in turn supported by a substructure of earthen fill (*id.* at 8). Approximately 2½ years after September 5, 1979, a "hairline" crack approximately fifty feet in length appeared in the north floor slab running approximately east to west (*id.* at 9). Prior to September 5, 1979, representatives of Stenersen did not observe any reduction in height of the north floor slab, but following this date

---

1. The Complaint was originally filed against Electronic Data Systems, which administers the loss adjustment process for SFIP claims, and the United States Department of Housing and Urban Development (HUD), of which FEMA is a part. Although a judgment by default was entered against HUD, HUD subsequently filed motions to set aside the judgment by default and to substitute Giuffrida, Director of FEMA, as defendant. These motions were granted. Defendant Electronic Data Systems filed a Motion to Dismiss, which was granted. Those decisions have not been appealed.

James S. Stenersen, Jr. discovered that this floor slab had suffered a reduction in height of 2½ inches from its former position (*id.* at 9).

The Bankruptcy Court further found that "after the flood on September 5, 1979, the water reached a level of approximately eight feet within the [subject] property," and that flood waters entered the underground compartments and a substantial volume of water flowed beneath the north floor slab thereby eroding and washing out the earthen fill beneath this slab, creating a void between the floor slab and the remaining earthen fill (*id.* at 10). The Bankruptcy Court found that the earthen fill washed through the north wall of the warehouse building by means of the porous cinder blocks and the cracks between them, causing the north wall to crack and bulge at the points where the earthen fill exited (*id.* at 10).

With respect to the terms of the SFIP, the Bankruptcy Court noted:

"The standard flood insurance policy executed by and between Stenersen and FEMA provided that 'the insurer does insure ... against all DIRECT LOSS BY FLOOD as defined ...' by the terms of the policy. The standard flood insurance policy defined flood as follows: 'Whenever in this policy the term "flood" occurs, it shall be held to mean: A. A general or temporary condition of partial or complete inundation of normally dry land areas from: (1) the overflow of inland or tidal waters. (2) unusual and rapid accumulation or runoff of surface waters from any source. (3) mudslide (i.e. mud flow), a river or flow of liquid mud proximately caused by flooding as defined in subparagraph A(2) above or by accumulation of water under the ground. B. The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the anticipated cyclical levels.'

The standard flood insurance policy in a section entitled 'Perils Excluded' provided that 'the insurer shall not be liable for loss: ... (d) by theft or by fire, windstorm, explosion, earthquake, landslide or any other earth movement except such mudslide or erosion as covered under the peril of the flood.' Under a section of the policy entitled 'General Conditions and Provisions' at paragraph (d), it is stated that 'no permission affecting this insurance shall exist or waiver of any provision be valid, unless granted herein or expressed in writing added hereto.' "

(*Id.* at 10–11).

After considering the testimony of the experts, the Bankruptcy Court concluded that water from the flood eroded and washed away the earthen fill beneath the floor slab, and flowed through the porous cinder block and through exit points in the north wall, and concluded that "[t]he subsidence of the north floor slab was flood-related because it was the proximate result of erosion and washout of earthen fill caused by on-rushing flood waters," and that it was, therefore, covered by the terms of the SFIP (*id.* at 13–14).

The Bankruptcy Court further found, however, that despite the fact that the north floor slab had subsided 2½ inches,

"Stenersen has not shown that it was damaged to the extent that the standard flood insurance policy ought to cover the cost of replacing the floor slab, for the following reasons. First, there has been no testimony or other evidence that the north floor slab cannot be used for the purposes for which it was intended and formerly used. Second, there has been no testimony or other evidence that the floor slab in its present state is a safety hazard. Third, there has been no testimony or other evidence that the north floor slab is structurally unsound. On the contrary, the evidence and testimony indicates that the north floor slab is currently being used by Stenersen without any detriment to the ongoing operation of its business."

(*Id.* at 13). It concluded, therefore, that appellant had suffered no injury from this

occurrence and could not recover under the SFIP (*id.* at 14).

## II. *Appeals*

Appellant asserts that the Bankruptcy Court's ruling, finding that appellant's property had suffered erosion from flood, a type of damage covered by the SFIP, but that appellant had suffered no compensable damage, is inconsistent and, therefore, clearly erroneous. Appellant contends that the decision should be reversed and that appellant should recover the cost of repair and replacement of the damaged property, as that amount was established by stipulation between the parties.

FEMA and Giuffrida, cross-appellants/appellees, assert that this court should affirm the Bankruptcy Court's decision to the extent that it found that appellant suffered no compensable damage. They further assert, however, that the decision should be reversed to the extent it concluded that the damage, if any, is covered by the terms of the SFIP.

## III. *Standard of Review*

▮▮▮ The factual findings of a bankruptcy judge must be accepted by the district court unless clearly erroneous. Bankruptcy Rule 8013; *In the Matter of Urban Development Company and Associates*, 452 F.Supp. 902, 905 (D.Md.1978). Due regard is to be given to a bankruptcy judge's opportunity to determine issues of credibility of witnesses. Bankruptcy Rule 8013; *In re County Green Ltd. Partnership*, 438 F.Supp. 693, 694 (W.D.Va.1977). Legal conclusions made by a bankruptcy judge, however, may not be approved by the district court on review without an independent determination. *Hunter Savings Ass'n v. Baggott Law Offices Co.*, 34 B.R. 368, 374 (S.D.Ohio 1983); *In re Hollock*, 1 B.R. 212, 215 (M.D.Pa.1979). Finally, on appeal, the district court is free to draw inferences or deductions different from those of a bankruptcy court on documentary, undisputed, and stipulated evidence. *In re Day*, 4 B.R. 750, 752 (S.D.Ohio 1980).

## IV. *Coverage under the SFIP*

FEMA and Giuffrida assert on appeal that, even if it were found that Stenersen's alleged damages constituted a "direct loss by flood" within the SFIP, recovery is nonetheless precluded under the "perils excluded" section of the policy. Appellees assert that the evidence presented during trial revealed that the alleged damage was caused by the settlement of the earth beneath the slab, and that this subsidence or earth movement is not covered by the terms of the policy, regardless of whether there was at that time a general condition of flooding. Stenersen, however, contends that such an interpretation ignores the standard insurance law principle of *ejusdem generis*, and that the Bankruptcy Judge properly concluded that such damage is covered by the terms of the policy.

The evidence in this case demonstrated, and the Bankruptcy Judge so held, that the damage to the floor resulted from the erosion and washing out of the earthen fill beneath the north floor slab. Based upon the evidence presented at trial, this conclusion is not clearly erroneous. The evidence strongly supports the court's conclusion that water from the flood eroded or washed out the earthen fill beneath the north floor slab, causing the slab to subside.

Upon this factual finding, the Bankruptcy Judge further found that the subsidence was flood-related, and covered by the terms of the SFIP. This application of the Bankruptcy Court's factual findings to the contractual terms of the SFIP constitutes a conclusion of law, over which this court must conduct an independent examination. Having conducted such an examination, this court finds that this legal conclusion is incorrect.

It is well settled that federal law governs disputes over coverage of standard flood insurance policies, issued pursuant to the National Flood Insurance Act, 42 U.S.C. §§ 4001 *et seq. See, e.g., Bull's Corner Restaurant, Inc. v. Director, Federal Emergency Management Agency*, 759 F.2d 500, 502 (5th Cir.1985); *Atlas Pallet,*

*Inc. v. Gallagher,* 725 F.2d 131, 135 (1st Cir.1984). "If no decisional or statutory federal law exists the federal courts may apply the traditional common law technique by drawing upon standard insurance law principles." *Dixie Warehouse v. Federal Emergency Management Agency,* 547 F.Supp. 81, 83 (M.D.N.C.1982). There exists decisional law, which appears to this court to be sound, on the issue at hand from other federal courts.

In *West v. Harris,* 573 F.2d 873 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979), the Fifth Circuit considered two claims of insureds under policies issued pursuant to the National Flood Insurance Act, one by West and one by Daigle.

The Daigle house had a slab foundation and had been built on reclaimed swamp land on soil which was a mixture of humus and clay. When the area received a twelve to fourteen inch rainfall in 1973, flooding occurred, and water was waist deep in the street in front of Daigle's house. The flood waters never entered the house, however. Following the flood, there was a drought which lasted several months. Almost immediately after the rainfall, Mrs. Daigle noticed damage to the house in the form of cracks in the walls. The factual circumstances in that case, with respect to the cause of the Daigles' damage, were stated by the court as follows:

> "Regardless of the role the flood ... played in bringing about the conditions that led to the damage of the Daigles' house, the testimony ... established without contradiction that the immediate cause of the damage was the settlement of the house due to uneven soil support. The house sank because the earth below it shifted and settled as a result of loss of moisture in the soil. Regardless of whether this settlement had been in process over a long period of time or whether it occurred immediately after the flood and draining of the canals, it was still the result of earth movement."

573 F.2d at 877.

The policy in that case provided that "the defendant 'shall not be liable for loss ...

by ... erosion, earthquake, landslide, or *any other earth movement except such mudslides as are covered under the peril of flood ...*'" 573 F.2d at 877. The court further stated that: "The policy does not cover loss caused by earth movement in the form of soil settlement. It unambiguously provides that the *only* earth movement covered is a mudslide caused or precipitated by accumulation of water on or under the ground." *Id.* Because there was no evidence of a mudslide in the record, nor evidence that the general surface of the ground area was unlevel, the court held that the Daigles' loss occurred in a manner which the policy clearly excluded from coverage, and that, therefore, the trial court should have directed a verdict for the defendant.

A similar result was reached by the court in *Watt v. Giuffrida,* 1984 Fire & Casualty Cas. (CCH) 988 (M.D.N.C.1983). There, plaintiffs alleged that the accumulation of rainfall backed up underneath the slab floor in the basement of their home and resulted in structural damage. Although the court denied recovery on grounds that the cause of the flooding was the manner of construction of plaintiffs' home, the court found that an "equally strong foundation" for the court granting summary judgment in favor of defendant was that the damage was caused by earth movement which was excluded under the terms of the policy. 1984 Fire & Casualty Cas. (CCH) at 990. The court noted that

> "Where plaintiffs' damages have resulted from water-caused earth movement beneath their property, courts have uniformly denied coverage under the flood insurance policy at issue here."

*Id.*

Also, in *Kolner v. Director, Federal Emergency Management Agency,* 1983 Fire & Casualty Cas. (CCH) 1129 (N.D.Ill. 1983), the court reached the same result. The facts in that case were very similar to those presented here. Flood water had entered plaintiffs' home, which had a concrete slab foundation and was built largely

upon peat, which tended to heave and settle with moisture changes. Following the flooding, plaintiffs noticed substantial structural damage. The court noted that "[t]estimony at trial established that all of the structural damage to the house was caused by the settlement of the foundation after movement of the soil surrounding the foundation." 1984 Fire & Casualty Cas. (CCH) at 1130. Defendant, although conceding that the home was damaged by the flood, contended that the damage was a direct result of the movement of soil under the home, and was, therefore, excluded from coverage under the policy.

In denying recovery, the court concluded:

"Regardless of whether the flood of March 25 precipitated the earth movement, the testimony of both experts established without contradiction that the immediate cause of the structural damage was the settlement of the house due to poor soil support. Regardless of whether this settlement had been in progress over a long period of time prior to the flood or whether it occurred immediately thereafter, it was still the result of earth movement. The defendant's policy of insurance clearly and unambiguously excludes coverage for such earth movement."

1984 Fire & Casualty Cas. (CCH) at 1131.

Appellant, however, asserts that these decisions should not be followed, arguing first that unlike the policy exclusion in *West*, which sought to except only "mudslide" from the type of "earth movement" not covered, the policy exclusion in this case also excepts from non-coverage "earth movement" found to be "erosion." Appellant contends that because the Bankruptcy Court found that the damage was caused by erosion, the policy in *West* is distinguishable and the damage to appellant was covered by the policy.

 The policy at issue excludes from coverage any loss caused "[b]y theft or by fire, windstorm, explosion, earthquake, landslide or *any other earth movement except such mudslide or erosion as is covered under the peril of flood*" (Plain-tiff's Trial Exhibit No. 1) (emphasis supplied). The only reference to erosion in the definition of losses covered states as follows: "The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the anticipated cyclical levels" (*id.*). There can be no question that the damage alleged to have been caused here, even if assumed to be the result of "erosion," is not "erosion" within the express language of the policy. Other courts have denied recovery where the damage was caused by erosion different from the type of erosion covered by the policy. *See, e.g., McAlister v. Director, Federal Emergency Management Agency*, 544 F.Supp. 15 (D.Ver.1982). Thus, this argument of appellant is without merit.

Appellant also asserts that the decisions in *West*, *Watt*, and *Kolner* are incorrect and should not be followed, because those courts failed to adhere to the standard insurance law principle of *ejusdem generis*, which requires that

"where general words are followed by a description of specified subjects, the meaning of the general words ordinarily will be presumed to be limited to the enumerated special subjects, and to include only those things of the same nature as those specially enumerated, unless a clear manifestation of a contrary intent appears."

*Peach State Uniform Service, Inc. v. American Ins. Co.*, 507 F.2d 996, 999 (5th Cir.1975) (quoting *State Farm Fire & Casualty Co. v. Rowland*, 143 S.E.2d 193, 196–97 (Ga.1965)). A related argument put forth by appellant is that the policy at issue is ambiguous and that, following the standard insurance law principle that insurance contracts which are ambiguous should be resolved against the insurer and in favor of the insured, the SFIP should be construed so as to provide coverage for the alleged damage. Appellant cites various cases in support of this argument.

The cases cited by appellant are clearly distinguishable from the instant case.

None of those cases concerned policies for flood insurance, let alone flood insurance policies issued by FEMA. Rather, they all appear to relate to comprehensive "all-risk" policies. *See Peach State*, 507 F.2d 996; *Koncilja v. Trinity Universal Ins. Co.*, 35 Colo.App. 27, 528 P.2d 939 (1974); *West American Ins. Co. v. Rauch*, 412 So.2d 956 (D.C.A.Fla.1982); *Anderson v. Indiana Lumbermen's Mutual Ins. Co.*, 127 So.2d 304 (La.1961); *Government Employees Ins. Co. v. DeJames*, 256 Md. 717, 261 A.2d 747 (1970); *New Hampshire Ins. Co. v. Robertson*, 352 So.2d 1307 (S.Ct.Miss.1977); *Barash v. Ins. Co. of North America*, 114 Misc.2d 325, 451 N.Y.S.2d 603 (S.Ct.1982). These cases did not involve any question as to whether damage was flood-related. In fact, the opinions in those cases cited by appellant which included policy terms indicate that damage from flood was specifically excluded under those policies. *See Peach State*, 507 F.2d 996; *West American Ins. Co.*, 412 So.2d 956; *New Hampshire Ins. Co.*, 352 So.2d 1307.

In addition, the policy terms of those cases are otherwise different from the policy here. For example, in *Anderson*, 127 So.2d at 308–09, the court found that the term "earth movement" was too general, and the principle of *ejusdem generis* required that it "be construed as embracing the same general kind, class or nature of peril as its companion words 'earthquake' and 'landslide.'" *See also Peach State*, 507 F.2d at 999–1000 (Finding the exclusion for damage resulting from "[e]arthquake, volcanic eruption, landslide, or other earth movement" to be ambiguous, and concluding that there was "no clear manifestation here of an intent not to limit the general term *other earth movement* in [the] policy to events of the same nature as earthquakes, volcanoes, and landslides."); *Barash*, 451 N.Y.S.2d 603 (Concluding that the deterioration of fill beneath a foundation was not within a clause excluding damage caused "by mudflow, volcanic eruption, earthquake, landslide or any other earth, boulder or rock (including fill rock) movement," because these are "sudden catastrophic events that normally affect more

than one plot of land," and served to exclude "sudden earth movement on a large scale.").

■ By contrast, the language in the present case sets forth specific types of covered earth movement, namely, the types of mudslides and erosion defined in the definition of perils covered. In setting out coverage for such types of earth movement, the policy here evidences a clear intent that mudslides and erosion are considered "earth movement" within the terms of the policy, and that mudslides or erosion which are not within the perils covered definition are not covered under the policy.

Finally, the superficial logic of appellant's argument that, because the damage alleged was caused by flood, the damage should be covered, has been rejected in other cases. As the court noted in *Kolner*, 1983 Fire & Casualty Cas. (CCH) at 1131:

> "Such an exclusion is consistent with the general policy underlying the Federal Flood Insurance Program. Insurance issued by that program is designed to protect homeowners against actual flood damage. It is not designed to protect against movement of the earth around the foundation even though the flood itself may have directly caused or indirectly contributed to that movement."

Thus, under the unambiguous language of the policy, the damage allegedly suffered by appellant is not a covered occurrence. Therefore, this court finds without merit appellant's arguments that coverage is appropriate under the rule of *ejusdem generis* or under the principle that ambiguous policies should be construed against the insurer and in favor of the insured.

Having concluded that the Bankruptcy Court erred in holding that the damage alleged by appellant was covered under the terms of the SFIP, the cross-appeal of appellees will be granted, and this court will remand with instructions for the Bankruptcy Court to enter judgment in favor of FEMA and Giuffrida. In addition, having so concluded, it is unnecessary to consider the appellant's argument that the Bank-

ruptcy Court's conclusion that appellant suffered no compensable damage was clearly erroneous.

Accordingly, it is this 8th day of April, 1986, by the United States District Court for the District of Maryland, ORDERED:

1. That the finding of the Bankruptcy Court that the alleged damage sustained by Stenersen Corporation was covered by the terms of its Standard Flood Insurance Policy is hereby REVERSED, and the case is REMANDED to the Bankruptcy Court for entry of judgment in favor of Louis O. Giuffrida and the Federal Emergency Management Agency.

2. That the Clerk mail a copy of this Memorandum and Order to counsel for the parties.