**In re AIRCRASH IN BALI, INDONESIA.**

**John P. CAUSEY, Jr., individually and as Executor of the Estate of John P. Causey, Sr., and as Administrator with will annexed of the Estate of Virginia D. Causey, et al., Plaintiffs–Appellees,**

v.

**Lee B. ZINKE, et al., Defendants,**

**and**

**Pan American World Airways, Inc., Defendant–Appellant.**

**No. 86–6453.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1989.

Decided March 27, 1989.

Clinton H. Coddington, Randolph S. Hicks, Richard G. Grotch, Coddington, Hicks & Danforth, Menlo Park, Cal., for defendant-appellant.

Robinson, Robinson & Phillips, Mark P. Robinson, John D. Rowell, Los Angeles, Cal., for plaintiffs-appellees Causey.

Nicholas R. Allis, Butler, Butler & Osborne, James G. Butler, Los Angeles, Cal., for plaintiffs-appellees Ryder.

Before FLETCHER, PREGERSON and LEAVY, Circuit Judges.

PER CURIAM:

This case involves the crash of Pan Am Flight 812 in Bali on April 22, 1974 in which the crew and all the passengers were killed. Pan American World Airways, Inc. (Pan Am) appeals an adverse jury verdict claiming numerous trial errors in evidentiary rulings and instructions and comments to the jury. We affirm.

I

The plaintiffs are the representatives of three deceased passengers—John Causey, Virginia Causey, and Wilson Ryder. According to the plaintiffs, the crash into a mountain side occurred because the pilot and his crew failed to respond to signals warning them of their dangerous location. At the end of the first trial, the jury found that Pan Am was liable for negligence, but not willful misconduct. The district court, holding that the limitations of the Warsaw Convention ("the Convention") did not apply, entered judgment for the full amount of the jury damage award.

On appeal, we held that the district court erred in ruling that the Convention did not apply in this case. We also held that the pilot, Captain Zinke's proficiency records were improperly excluded. We remanded for a second trial on two limited issues: (1) whether there was willful misconduct of corporate management or the crew; and (2) whether Pan Am had complied with the passenger notice requirements of the Con-

vention.[1] *In re Aircrash in Bali, Indonesia*, 684 F.2d 1301, 1313 (9th Cir.1982).

The same district judge presided over the first and second trials. At the end of the second trial, the jury returned answers to special interrogatories stating that: (1) Captain Zinke and the other members of the crew were not liable for willful misconduct; (2) Pan Am's management was liable for willful misconduct in entrusting Flight 812 into the care of Captain Zinke; (3) Pan Am's passenger tickets contained an adequate warning of the Convention's damages limitation; and (4) Pan Am failed to display signs warning of this limitation. We have jurisdiction pursuant to 28 U.S.C. § 1291.

II

■ Pan Am argues that the jury instructions on willful misconduct were erroneous. "In reviewing jury instructions, the court must consider whether the instructions as a whole were misleading or inadequate to guide the jury's determination." *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir.1983). In deciding whether the jury was misled, the court should also consider the guidance to the jury provided by the verdict form. *See Boggs v. Lewis*, 863 F.2d 662, 666 (9th Cir.1988) ("[t]his court reviews the jury instructions and the verdict form together to determine whether the jury was misled").

We have reviewed the jury instructions and the verdict form used in this case and conclude that the jury was not misled. Although there is some merit to Pan Am's contention that the trial judge incorrectly substituted the word "or" for the word "and" in one of the instructions regarding willful misconduct, the judge's other instructions on willful misconduct and the verdict form were adequate to communicate to the jury the requirements for a finding of willful misconduct.

1. The Convention limits damages in airline crashes to $75,000 per passenger except where the crash was the result of willful misconduct or where the passenger was not given adequate notice of the Convention's damages limitation.

## III

■ Pan Am next argues that the judge's improper remarks influenced the jury's finding that Pan Am engaged in willful misconduct. We will reverse on the basis of a judge's improper remarks if the judge "expresses [his] opinion on an ultimate issue of fact in front of the jury or [argues] for one of the parties." *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 531 (9th Cir.1986). *See also Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1289 (9th Cir.1984) (noting that "[v]ery few cases outside of the criminal law area support an appellate finding of judicial misconduct during trial"). Pan Am has failed to meet its burden of showing that the district judge expressed his opinion about the ultimate issues in this case or argued on behalf of the plaintiffs. *See also Maheu v. Hughes Tool Co.*, 569 F.2d 459, 471 (9th Cir.1978); *Shad*, 799 F.2d at 531 ("In order to aid the jury in reaching a just conclusion, it is within the trial court's discretion to call attention to evidence it believes important.").

## IV

■ Pan Am also argues that the district court erred in informing the jury of the consequences of a finding of willful misconduct. The judge told the jury that, if the jury found against the plaintiffs on the issue of willful misconduct, the plaintiffs would be limited to the amount of damages permitted by the Warsaw Convention.

The circuits are split on the question of whether a district judge abuses his discretion when he informs the jury of the effect of its answers to special verdict interrogatories. In *Vinieris v. Byzantine Maritime Corporation*, 731 F.2d 1061, 1065 (2d Cir. 1984), the Second Circuit noted that "the theory ... that juries should not be informed of the legal effect of their answers in Rule 49(a) cases ... has been the subject of both judicial and scholarly criticism," and reversed in part because the trial court failed to inform the jury of "how large a financial stake plaintiff had in the outcome of the case." The Seventh Circuit has adopted the opposite view. *See Gullett v.*

*St. Paul Fire & Marine Insurance Co.*, 446 F.2d 1100, 1105 (7th Cir.1971) ("[t]he purpose of a special verdict is to concentrate the jury's attention exclusively upon the fact questions put to them. Comments on the legal effects of the answers could in an appropriate case have a prejudicial effect of clouding this purpose.").

Our court has suggested by way of guidance to the district court on retrial, in the context of another case, that the district court had not abused its discretion by refusing to inform the jury of the consequences of its answers to interrogatories. *Carvalho v. Raybestos–Manhattan, Inc.*, 794 F.2d 454, 457 n. 2 (9th Cir.1986). We conclude in the case before us that the district court's decision to inform the jury of the effect of a finding of willful misconduct was not an abuse of discretion.

Since the jury was charged with deciding whether Pan Am gave the passengers adequate notice of the damages limitation of the Warsaw Convention, the jury obviously had to be informed about that limitation. *See* Fed.R.Civ.P. 49(a) ("[t]he court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings on each issue"). If the jury had not been informed of the connection between the plaintiffs' arguments that Pan Am committed willful misconduct and the damages limitation, the jury would have deduced a connection on its own and it might have been erroneous. The district judge did not abuse his discretion when he decided to eliminate the risk that the jury would deduce an inaccurate connection between a finding of willful misconduct and the damages limitation. *See* 9 Wright & Miller, Federal Practice and Procedure § 2509, at 513 (1971) ("an attempt to keep the jury in the dark as to the effect of its answers is likely to be unavailing, and there is always the danger that the jury will guess wrong about the law, and may shape its answers to the special verdicts, contrary to its actual beliefs, in a mistaken attempt to ensure the result it deems desirable").

## V

Pan Am next contends that the admission of the Hudson and Thomas reports constituted reversible error. The Hudson report is a Federal Aviation Administration ("FAA") report on Pan Am's safety record and procedures, which was commenced shortly after the Bali crash; the Thomas report is a Pan Am report on Pan Am's safety record and problems, which was apparently completed just before the Bali crash.

The standard of review for a district court's evidentiary rulings is deferential. "A trial court has broad discretion to admit or exclude evidence, and we review its decision only for an abuse of that discretion. Even if there is error, reversal is appropriate only if we can say that the error affected the substantial rights of the parties." *In re Aircrash in Bali*, 684 F.2d at 1313 (citation omitted).

■ The Hudson report was properly admitted pursuant to Fed.R.Evid. 803(8)(C), which creates a hearsay exception for public documents. Contrary to Pan Am's assertions, the Hudson report was not inadmissible under Rule 803(8)(C) simply because it includes evaluative or normative findings. *See Beech Aircraft Corp. v. Rainey*, — U.S. —, 109 S.Ct. 439, 445–50, 102 L.Ed.2d 445 (1988); *Jenkins v. Whittaker Corporation*, 785 F.2d 720, 726 (9th Cir.1986) ("[c]onclusions and opinions do not render reports *ipso facto* inadmissible"). Further, Pan Am has failed to demonstrate that the report was untrustworthy or unduly prejudicial.

■ Pan Am argues that the district court erred in admitting the Thomas report pursuant to Rule 801(d)(2)(D). This rule provides that statements which are not hearsay include admissions of a party opponent and defines such admissions as "a statement by [the party's] agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." Since all but one of the eight authors of the report were experienced Pan Am crew members, we hold that the Thomas report was admissible as an admission of Pan Am employees concerning matters within the scope of their employment. As with the Hudson report, Pan Am has failed to support its contention that the Thomas report was unduly prejudicial.

Pan Am also argues that the Hudson report and the Thomas report in effect were subsequent remedial measures and were thus inadmissible under Fed.R.Evid. 407, which states that measures taken after an event which would have made the event less likely to occur are not admissible to prove culpable conduct. The purpose of Rule 407 is to ensure that prospective defendants will not forego safety improvements because they fear that these improvements will be used against them as evidence of their liability.

■ Since the Thomas Report, a comprehensive report many months in the making, was dated only one day after the Bali crash, it is patently clear it was not a response to the crash. We find no basis for treating the Thomas Report as a subsequent remedial measure.

■ Although the question is closer, we conclude the Hudson Report was not a subsequent remedial measure within the meaning of Rule 407. The Hudson investigation began five days after the Bali crash, and the report is dated June 13, 1975 (about 14 months after the crash). However, the Hudson report does not qualify as a subsequent remedial measure because it was prepared by the FAA without the voluntary participation of Pan Am.[2]

---

2. We need not address the issue of whether post-accident studies generally qualify as remedial measures under Rule 407. Two courts have held that "subsequent remedial measures" include "only the actual remedial measures themselves and not the initial steps toward ascertaining whether any remedial measures are called for." *Fasanaro v. Mooney Aircraft Corp.*, 687 F.Supp. 482, 487 (N.D.Cal.1988); *Rocky Mountain Helicopters v. Bell Helicopters Textron*, 805 F.2d 907, 918 (10th Cir.1986) (same). *But see Alimenta, Inc. v. Stauffer*, 598 F.Supp. 934, 940 (N.D.Georgia 1984) (post-event accounting report in civil fraud suit is a subsequent remedial measure under Rule 407).

A number of courts outside this circuit have adopted the view that Rule 407 applies only to subsequent remedial measures by the defendant. *See, e.g., Koonce v. Quaker Safety Products & Mfg Co.*, 798 F.2d 700, 719–20 (5th Cir.1986). The purpose of Rule 407 is not implicated in cases involving subsequent measures in which the defendant did not voluntarily participate. Where the defendant has not voluntarily participated in the subsequent measure at issue, the admission of that measure into evidence does not "punish" the defendant for his efforts to remedy his safety problems. In this case, Pan Am's management, although to be commended for its cooperation, nonetheless was legally obligated to cooperate with the FAA's investigation. *See* 14 C.F.R. § 13.3. Thus, the admission of the Hudson report did not penalize Pan Am for its voluntary participation in safety measures.[3]

## VI

Pan Am's final argument is that the district court's instruction on the Convention's notice requirement was erroneous. Under the Warsaw Convention, the Convention's damages limitation does not apply if the defendant committed willful misconduct *or* if the passengers in question received inadequate notice. Since we uphold the jury's finding that Pan Am's management committed willful misconduct and therefore hold that the Convention's damages limitation is inapplicable in this case, we need not address Pan Am's challenges to the notice instruction.

## CONCLUSION

We affirm the district court.

---

**3.** In its brief, Pan Am also objects to the admission of the Indonesian report. At oral argument, Pan Am's counsel conceded that Pan Am was no longer pursuing its objection to the Indonesian report because that report addresses only the culpability of the crew of Flight 812.